WAIT (GOODYEAR v.).    See Case No. 5,587.

---

## Case No. 17,044.

### In re WAITE et al.

[1 Lowell, 207;[1] 1 N. B. R. 373 (Quarto, 84).]

District Court, D. Massachusetts.    Feb., 1868.

PARTNERSHIP — ACTIVE AND SILENT PARTNERS — PROMISSORY NOTE—ACTS OF BANKRUPTCY —FRAUDULENT PREFERENCE.

1. Where a firm consisting of two partners carried on business in the name of the active partner, a promissory note given by him to the silent partner, for the amount of capital contributed by the latter to the joint stock, is the separate note of the active partner.

[Cited in Re Batchelder, Case No. 1,098; Re Redmond, Id. 11,632; Re Lane, Id. 8,044.]

2. Where such a firm, being insolvent, and known by the partners to be so, is dissolved, and the silent partner conveys all. his interest in the joint property to the active partner, who on the same day, and as part of the same transaction, mortgages the whole stock in trade to secure the pre-existing debt of a separate creditor of each partner, and neither partner had any separate estate: *held*, this transaction is fraudulent throughout, in the sense of the bankrupt law, as a preference; and both partners are liable to be adjudged bankrupt on the petition of a joint creditor, seasonably filed.

[Cited in Re Johnson, Case No. 7,369; Mattocks v. Rogers, Id. 9,300; Re Sauthoff, Id. 12,380.]

In bankruptcy.

This was a petition by joint creditors of Walter H. Waite and E. J. Crocker, lately

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

partners, trading under the name of Waite alone, that they might be adjudged bankrupts, and was filed October 15, 1867. The evidence showed that E. S. Jaffray & Company, the petitioning creditors, had encouraged Waite to set up in Boston a business in which he had had long experience as a clerk and salesman, and had lent him five thousand dollars as his capital, on his promise to procure a partner who should put in an equal amount; and they further promised, if this should be done, to give the firm a large "line" of credit. Crocker put in six thousand four hundred dollars, which he borrowed of Mrs. Badger, his wife's mother, and took Waite's notes therefor, on demand, which he at once indorsed to Mrs. Badger; and he wrote the petitioners that he was a general partner, though his name would not appear, "at first," in the firm, for reasons which he gave. The petitioners sold a large amount of goods to Waite, on credit. the price of which was admitted to be the joint debt of the firm, and their debt was larger than those of all others together.

Crocker took no active part in the business, and had no property of his own, and no experience in this kind of business. Nor had Waite any separate estate. A short time before the joint debt to the petitioners came due, Crocker urged Waite to take an account of stock, and make an exhibit of the state of the partnership business. Waite did this, after much importunity on Crocker's part, and the account was finished and examined by the parties on the twenty-third of September, 1867. Crocker testified that on seeing the account he was dissatisfied with the small amount of sales, and the large amount of Waite's personal expenses, and proposed a dissolution of the firm, which was agreed to. Waite's statement was that Crocker said he was unwilling to let the money lie longer without security, and that, hoping to get a new partner, he agreed to give security. They went immediately to the office of Crocker's attorney, where a formal dissolution of the firm was drawn up and executed, by which the whole stock. &c., was made over to Waite, and he agreed to pay the joint debts. On the same day and as part of the same transaction, Waite's notes. held by Mrs. Badger, were given up, and he made out new notes directly to her for the whole amount of the old notes and the interest due on them, payable one-third on demand, one-third in four months, and one-third in eight months, with interest, and secured them by a mortgage on the whole stock in trade, furniture, and fixtures. This mortgage was the act of bankruptcy relied on by the petitioners.

T. H. Sweetser and E. H. Abbot (T. F. Nutter with them), for the petitioners.

B. F. Brooks, for Crocker, and A. A. Ranney, for Waite. Partners may dissolve their connection when they please, and whether they are insolvent or not, and their acts in this respect. will be upheld by the courts. . Ex parte Ruffin, 6 Ves. 119; Ex parte Williams, 11 Ves.

3; Howe v. Lawrence, 9 Cush. 553; Robb v. Mudge, 14 Gray, 534.

There was no fraud in fact intended in this case.

LOWELL, District Judge.    It is evident that the defendants were insolvent in the technical sense on the twenty-third of September, for they had no ready means to meet the large debts presently to fall due; and they were fully aware of this state of things, and discussed the means for obtaining an extension of time. If so, a mortgage of the whole stock in trade to a pre-existing creditor would be prima facie a preference. In England such a mortgage to a pre-existing creditor has always been held to be fraudulent per se, where it is of the whole stock, or of so much as will produce insolvency.  Worseley v. De Mattos, 1 Burrows. 647; Newton v. Chantler, 7 East, 138; Siebert v. Spooner, 1 Mees. & W. 714; Lindon v. Sharp, 6 Man. & G. 895; Graham v. Chapman, 12 C. B. 85; Smith v. Cannan, 2 El. & Bl. 35. I do not say that under our statute such a mortgage is conclusive evidence of a technical fraud; but it is very strong evidence, because it is out of the ordinary course of business, and is of itself enough, if duly recorded, to destroy the credit of any trader, and therefore would not be resorted to by one who had readier means of paying the debt.

There is the further circumstance that Mrs. Badger was not a joint creditor as to the larger part of her debt. Crocker says he does not know whether the notes given him by Waite were intended to be joint or separate; but Waite says they were separate; and they must have been so, because they were given for capital contributed by Crocker, and he would not promise himself to repay it. The notes, being on demand, were subject, by the law of Massachusetts, to the same equities in the hands of Mrs. Badger that would have affected them in Crocker's, and as he was her agent, she would be bound by his knowledge, whatever had been the form of the notes.  Here there is a mortgage of all the joint estate to secure a separate debt, neither partner having any separate property. This appears a preference on the face of the transaction, and the evidence rather confirms the inference than removes it. But it is said that partners may lawfully dissolve their firm, even if they are insolvent, and that their creditors will be bound by their action, though it should have the effect to convert joint into separate property to the injury of a large class of creditors. The courts have certainly gone a great way in sanctioning the dissolution of partnerships, and have held to what appear to be the logical consequences of the dissolution. But every such judgment which I have seen is qualified by the condition that the act itself should have been done in good faith. Here the evidence is very strong that good faith was wanting. The partnership articles have been destroyed, and their contents, excepting in one particular, have not been disclosed. It appears, however, that Crocker urged the taking of the account before the regular time of accounting according to the articles had come; that he acted throughout not as a partner, but as agent for Mrs. Badger, and with a view to her interests; and I consider it the fair result of the whole conduct of the parties, that he never intended to risk his mother's capital, but intended to get security for it, whenever he should have occasion to fear an eventual loss. He had no property of his own, and no interest to dissolve the firm, but some interest to continue it with a view to possible profits.

Under the peculiar circumstances of this case, the dissolution of the partnership was a fraud on the statute, and rather an incident to a scheme for giving one creditor a preference, than a bona fide copartnership act. Indeed the mere dissolution itself would work a preference to the separate creditors of Waite, by converting the joint into separate assets; and where such a result is contemplated, and is the motive or one of the motives of the act of dissolving a firm, the act is voidable by the joint creditors, whether the result must be worked out through a bankrupt law or through the attachment laws of a state. Ex parte Shouse [Case No. 12,815]; Ferson v. Monroe, 1 Fost. (N. H.) 462.

Under the bankrupt act of 1841 [5 Stat. 440], a transaction which was relied on as a preference by a debtor, must have been done in contemplation of becoming bankrupt under the statute; though such contemplation might have been inferred from circumstances like those which this case discloses.    Buckingham v. McLean, 13 How. [54 U. S.] 150. The law of 1867 [14 Stat. 517] is not thus limited, and requires only that the debtor, being insolvent, should do the act, with intent to prefer (see sections 29, 35, 39); which implies, undoubtedly, that the debtor expected that some advantage would accrue to the favored creditor over the rest; that is. he must have thought it probable or possible that he should not pay all in full. Under every system of bankruptcy, such facts as appear in this case would be ample proof of the intent.

Such a mortgage, given with the intent to prefer, may be charged either as a preference or a conveyance to delay and hinder creditors, for it is both.    And the creditors may well enough rely on the mortgage or on the dissolution of the firm, or on both; for it was all one transaction, and all fraudulent in the technical sense, as a preference in bankruptcy, though at common law and in equity the securing a just debt is no fraud.

This case does not raise the question whether partners can be adjudged bankrupt for any thing done or omitted after they have dissolved their connection, because the act of bankruptcy was contemporaneous with the dissolution and a part of the same transaction. I have no doubt that a joint voluntary petition may be maintained so long as there are joint debts outstanding, but here it is only necessary to decide that a fraudulent dissolution will not

oust the jurisdiction of a joint petition in invitum, and that I decide. Adjudication ordered.

[See Case No. 7,170.]