## In re GILBERT et al.

### (District Court, D. Oregon. January 29, 1902.)

### No. 472.

1. **ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER.**
   In a suit against partners, not friendly in its nature, and not instigated by them, a stipulation by one of the partners, made in good faith, for the appointment of a receiver for the firm, and the subsequent transfer of its assets by him to the receiver, is not a "general assignment" within the bankruptcy act, and is not an act of bankruptcy.

2. **SAME—PREFERENCES—INTENT.**
   To authorize an adjudication of bankruptcy on the ground of preferences to creditors, it must appear that the transfers to the creditors were made with intent to prefer them.

3. **SAME—PRESUMPTIONS—INTENT TO PREFER.**
   Where a debtor, with knowledge of his insolvency, transfers property to his creditors, an intent to prefer them will be conclusively presumed.

4. **SAME—KNOWLEDGE OF INSOLVENCY.**
   A debtor is presumed to know his financial condition.

5. **SAME—WANT OF KNOWLEDGE—EFFECT.**
   Where an insolvent debtor, who has transferred property to his creditors, establishes his want of knowledge as to his insolvency, he rebuts the presumption of an intent to prefer which arises from the fact of insolvency.

6. **SAME—INSOLVENCY.**
   In involuntary bankruptcy a debtor will not be presumed insolvent because he did not, in his answer, make a complete showing of solvency, where, prior to the filing of the involuntary petition, he had assisted a receiver in preparing an inventory of his assets and liabilities, which appeared to be complete, had advised with him as to the probable loss in collecting assets, and had afterwards transferred his assets to the receiver, and where the attorneys representing the petitioners had also appeared for the plaintiffs in the receivership proceedings.

7. **SAME—EVIDENCE OF INSOLVENCY—BELIEF OF DEBTOR.**
   In involuntary bankruptcy, where, on an issue as to a debtor's insolvency at the time of alleged preferences, there was a wide discrepancy as to the value of his assets, so that on an estimate made by petitioners' witnesses the liabilities exceeded the assets by $50,000, but on estimates made by the debtor's witnesses, who were equally capable of forming a trustworthy opinion, the assets exceeded the liabilities by $25,000, it was a necessary conclusion that the debtor believed himself solvent, and therefore that he had not committed an act of bankruptcy.

8. **SAME—INTENT TO PREFER.**
   The presumption of an intent to prefer creditors arising from a transfer of property by an insolvent is affected by the amount of the transfer, and is not as strong where the transfer is of a comparatively small part of the debtor's property.

In Bankruptcy.

H. J. Bigger, Roger B. Sinnott, Carson & Adams, John A. Jeffrey, and W. T. Slater, for petitioners.

Brown, Wrightman & Myers, for A. T. Gilbert.

Cake & Cake, for F. N. Gilbert.

BELLINGER, District Judge. This is a proceeding in involuntary bankruptcy against A. T. and F. N. Gilbert, as partners in the conduct of the banking business of Gilbert Bros., at Salem, Or.

The petitioners in the original and amended petitions are Ida Muths, William Iwan, and A. S. Eppley, creditors of Gilbert Bros. in the aggregate sum of $1,978. Subsequently one Loo Jim, a creditor in the sum of $500, also filed a petition, praying for an order of adjudication in bankruptcy. The acts of bankruptcy relied upon by the petitioners are alleged as follows: That Gilbert Bros., being insolvent, did, within four months of the filing of the original petition, transfer securities by way of preference to certain creditors to the aggregate amount in value of about $7,000; that subsequent to the filing of the original petition A. T. Gilbert entered into a written stipulation in a suit then pending against Gilbert Bros., brought by or in the interest of the heirs of William Cosper, deceased, whereby it was stipulated that one Claud Gatch might be appointed receiver of said firm, and that said Gatch should convert the assets of the firm into cash for the payment of all the firm's creditors and the winding up of its business. Other acts of bankruptcy were alleged in the petitions filed, but upon the hearing these were abandoned. It is contended that F. N. Gilbert is a partner in the business of Gilbert Bros., and this is a question in the case material only in the event that an act of bankruptcy is proven as alleged. The stipulation that a receiver might be appointed, and the subsequent transfer by A. T. Gilbert, do not have the effect of a general assignment, within the meaning of the bankruptcy act. This question was decided by the circuit court of appeals in the Second circuit in a recent case, in which the court says:

"When the statute declares that a general assignment for the benefit of creditors is an act of bankruptcy, can it be construed to include an act which is not a general assignment? We think that it cannot, because the term has a universally understood and recognized meaning throughout the different states, and means a transfer and conveyance by a person of all his property to a named person upon a trust, which is to be worked out in some states by a court of probate and insolvency, in some states by a court of common law, and in some states by a trustee, subject only to the supervision to which any trustee is subjected. It is a deed or conveyance which the grantor makes voluntarily, or sometimes by compulsion, at the instance of a court of insolvency. A petition for the appointment of a receiver is not that proceeding which is universally recognized as an assignment, and its equivalency' of result, if equivalency exists, is not important. The bankruptcy statute has said that the one is' an act of bankruptcy, and has said nothing about the other in direct terms; and, when acts of bankruptcy are classified, as they are in the statute of 1898, it is not the province of a court to enlarge the classification because the omitted class seems to partake of the sin of the named class." In re Empire Metallic Bedstead Co., 39 C. C. A. 372, 98 Fed. 981.

This is a much stronger case against the contention that consent to the appointment of a receiver operates as an assignment within the meaning of the bankruptcy act than that from which the above quotation is made. The suit in which Receiver Gatch was appointed was not a friendly suit. It is not claimed that it was procured or acquiesced in by A. T. Gilbert. The bank of Gilbert Bros. had already been forced to suspend by reason of a suit previously brought in the circuit court of the United States for this district by one of the heirs of William Cosper, claiming a liability from the bank to the said heirs in the sum of $350,000. A receiver was appointed to

take charge of the property and assets of the suspended bank during the pendency of the suit. The bill of complaint in that suit was dismissed for want of jurisdiction. In the meantime the administrator of the Cosper estate brought in the state court the suit in which Gatch was appointed receiver. Both of these suits were in the same right, and hostile to the respondents. In stipulating as he did, A. T. Gilbert acquiesced in what he could not help, and thereby saved needless expense to the estate and delay in its distribution. To authorize an adjudication of bankruptcy, it must appear that the transfers complained of were made with intent to prefer the creditors to whom they were made. If the respondent was insolvent, and had knowledge of the fact, an intent to prefer will be conclusively presumed. There is a further presumption that the debtor knows his financial condition as to solvency, but this is a disputable presumption, and, if the debtor honestly believes himself to be solvent, or if he establishes his want of knowledge as to his insolvency, he then rebuts the presumption of an intent to prefer which arises from the fact of actual insolvency. Coll. Bankr. 31. The bankruptcy act declares that a person shall be deemed insolvent within the provisions of the act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts.

It is, then, necessary to know whether the respondent A. T. Gilbert was insolvent when he made the transfers referred to; and, if so, has he established his want of knowledge at the time as to his financial condition? It is contended for the petitioners that A. T. Gilbert must be presumed insolvent, because he did not, in his answer, make a full and complete showing to the contrary. The rule invoked is a rule of good faith. Prior to the filing of the petition in bankruptcy, A. T. Gilbert had assisted the receiver in the United States court in preparing an inventory of his assets and liabilities. That inventory appears to have been full and complete. The respondent A. T. Gilbert advised with the receiver as to the probable loss that would result in collecting the overdrafts of the bank. Thereafter he transferred the assets of the bank to the receiver in the state court. Attorneys who appeared for the plaintiff in the suit in the United States court represent the petitioners here. Substantially all that is now known, after all the testimony has been taken, and all there is to know, was then a matter of public record. These facts do not authorize a presumption of insolvency against A. T. Gilbert, and such insolvency, if it existed, must be otherwise established. The receiver appointed in the United States circuit court made an inventory of the assets of Gilbert Bros., from which such assets are placed, in round numbers, at $164,000, and the liabilities at $191,000. He testifies that his estimate of assets was made "from the books of the bank, from the notes that were found in the bank, and the copies that were deposited as collateral, from information obtained from A. T. Gilbert, and from information,

wherever he could find it, that he deemed reliable," as to the value and condition of the property. The principal assets of Gilbert Bros. consist of overdrafts and loans and discounts, the face value of the former being $93,875, and of the latter $78,357. The condition of the bank as to solvency depends upon the estimate of value placed upon these assets. The receiver in the United States circuit court valued the overdrafts at $81,922, and the loans and discounts at $65,000.; a loss on the former of $11,953, and on the latter of $13,-357. Mr. Conway, a man of experience in such matters, who assisted the receiver in preparing his inventory, agrees substantially in this estimate of the probable loss on overdrafts, but he estimates the loss on loans and discounts at $26,000. Since the inventory referred to was made, three-fourths in amount of the overdrafts have been collected by the state court receiver, who testifies that the loss on this account will not exceed two, three, or four thousand dollars. The loan and discount account, with the exception of some $20,000 in amount, consists of what are called "piano notes." These notes are an exceptional kind of assets. They are payable generally on long time, in installments, and are secured by the instrument sold. Whale, a witness who has had some connection with this business, places the loss on these notes at $3,000. A. T. Gilbert, in advising the receiver of the United States circuit court, estimated their value at $70,000, but he stated at the time that his estimate was low, because the bank was in the hands of a receiver; that the notes were good, and ought to pay out nearly their face value, and would do so if he was able to collect them. There is a wide discrepancy between the witnesses as to the value of the other assets of A. T. Gilbert, consisting principally of real estate; so that upon the estimate of values made by the witnesses for the petitioners the liabilities of Gilbert Bros. exceed the assets by above $50,000, while upon the estimates made by the witnesses for A. T. Gilbert his assets exceed his liabilities by above $25,000. Opinion evidence is untrustworthy at best, but this evidence has not the usual quality of expert opinion founded upon reasons which afford some basis for a judgment as to its value. The opinions in this case pro and con are mere guesses, signifying little, proving nothing. In such a case, where a long and hostile inquiry has left the question of the solvency of A. T. Gilbert in doubt, what must the conclusion be as to what A. T. Gilbert himself thought of his solvency at the time the transfers complained of were made? Under the old bankruptcy act, inability to pay debts as they matured constituted insolvency. Then the matter of solvency was a simple one. Now a new test is prescribed: Does the respondent's property, at a fair valuation, equal his liabilities? And this is a thing about which the owner may not know, but, if he himself thinks he is solvent, it is enough; and in a case like this, where others, equally capable with those who think otherwise of forming a trustworthy opinion, think the respondent solvent, it is a necessary conclusion that he thought himself so, and that he was honest in that opinion. Where the facts and circumstances permit it, the presumption must be in favor of good faith, rather than the contrary.

The presumption arising from the transfer of property by an insolvent is affected by the amount of such transfer. Thus, where the transfer was of all one's property, this was held to afford a violent—almost conclusive—presumption of an intent to prefer, where there were other creditors unprovided for (In re Waite, 1 Low. 207, Fed. Cas. No. 17,044); and a like effect was given in Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481, to the transfer by an insolvent "of a large part of his property." In this case the transfer was of a comparatively small part of the property of A. T. Gilbert,—so small that the expediency of resorting to a bankruptcy court, rather than permit a distribution of the assets of the bank through the pending proceedings in the state court, may be doubted. If the preferences complained of are set aside, it will add not more than 1 per cent. to the dividends to be paid the general creditors. The difference between the face of the debts alleged to have been preferred and their pro rata without preference, distributed among the unsecured creditors, will amount to a little less than 1 per cent. on the unsecured indebtedness, while the commissions of the referee and trustee in bankruptcy upon the estate available for general distribution, on Thielsen's estimate, will be about 1.6 per cent. of the unsecured indebtedness. The accruing expenses of the receivership in the state court will probably not equal these and the other costs and charges that will result from the administration of the estate in a bankruptcy court, and the benefit to the unsecured creditors from such administration, if any should result, will not be appreciable. The petitioners, however, express a hope that the bankruptcy court may succeed in discovering other assets that have been misapplied or covered up; but what the receivers have not found, and the large amount of testimony taken so far has not disclosed, is not worth considering in estimating the possible advantage to result from the exercise of jurisdiction in what is at least a doubtful case. It is due to the petitioners, however, to state that in the petitions filed in this case certain transfers to Ladd & Bush, A. Bush, and the First National Bank of Portland, aggregating a large amount, were alleged to be preferences, but upon the hearing it was stated that the petitioners had ascertained that these transfers were for a present consideration, and valid, and the complaint as to them was abandoned.

Petition dismissed.