### In re DOSCHER et al.

#### (District Court, E. D. New York. December 24, 1902.)

1. BANKRUPTCY—INSOLVENCY—PROPERTY TO BE EXCLUDED FROM ASSETS.

   Where property has been transferred in payment of or as security for a just debt, the mere fact that it may involve a preference in bankruptcy, should bankruptcy proceedings be instituted against the debtor, does not exclude it from consideration in determining his solvency under the provisions of Bankr. Act, § 1, subd. 15 [U. S. Comp. St. 1901, p. 3419].

2. SAME—PROOF OF INSOLVENCY—ADMISSION OF CORPORATION.

   A petition filed in a state court by the directors of a corporation, alleging its insolvency, and praying its dissolution and the appointment of

a receiver, is not a sufficient ground for a finding of insolvency by a court of bankruptcy in involuntary proceedings subsequently instituted against it, where a different rule as to what constitutes insolvency obtains in the state courts from that prescribed by the bankruptcy act, and especially when the schedule attached to such petition showed an apparent excess of assets over liabilities.

In Bankruptcy. Hearing on petition in involuntary bankruptcy.

Henry F. Cochrane, for petitioners.

Hamilton & Beckett (William H. Hamilton, of counsel), for respondents.

THOMAS, District Judge. The Malcom Brewing Company, organized about 12 years ago for brewing business, owns land on which there is a well-equipped brewery and malthouse, and stable buildings, in the borough of Brooklyn, mortgaged for the sum of $200,000, to secure 6 per cent. bonds due January 1, 1906. For the last several years the business of the corporation has declined largely, and the stockholders have made loans to the company to the amount of $150,000, for which were given notes, upon which no interest has been paid for two years. These notes have been renewed from time to time, and finally to February, 1903, except those aggregating a few hundred dollars, which were paid in 1901, and excepting, also, the three notes known herein as the "Doscher Notes," amounting to $11,798. In addition to such indebtedness, one Claus Doscher, the father of Henry Doscher, one of the petitioners, holds a note for $10,000, for money loaned the company November 27, 1900. In December, 1900, and January and February, 1901, William Dick, father of J. Henry Dick, one of the present directors of the company, made a cash loan to the company amounting to $40,000, which was represented by notes due in the summer of 1902. In June, 1902, William Dick issued a summons and complaint against the company, to recover this $40,000; but the company obtained forbearance, and no judgment was entered therefor. On July 14, 1902, Henry Doscher sued the company for the cash loan of $10,000 which had been made to the company by Claus Doscher, and also upon various stockholders' notes issued to the Doscher family; the claim, in all, amounting to about $24,000. On July 15, 1902, all the directors of the company joined in a petition to the supreme court, praying for a voluntary dissolution of the company; but such petition was not presented to the court until July 28th, which was shortly before the time when Doscher was entitled to enter his judgment. On April 23, 1902, the directors of the company passed the following resolution:

"The officers of this company be, and are hereby, authorized to borrow, at the best rate of discount possible, the sum of $45,000, for the purpose of procuring liquor tax certificates for the company's customers for the year beginning May 1, 1902; and that said officers be, and are hereby, authorized to reassign all the assignments of said liquor tax certificates held by the company to secure such loan, and that said officers, if necessary, procure the indorsements of individual stockholders to notes given for said loan, and that said officers be, and are hereby, authorized to execute assignments of all chattel mortgages held by the company to the Manufacturers' National Bank, as

trustee, for the purpose of further securing such stockholders' indorsements to above-mentioned notes."

Christian M. Meyer, one of the directors present when such resolution was passed, and the William Dick hereinbefore mentioned, indorsed notes aggregating $45,000, issued pursuant to such resolution, for the purpose of procuring their discount at the Manufacturers' National Bank and the Nassau Trust Company. The money so obtained on April 30, 1902, together with $10,000 of the company money, was on or about May 1st used in procuring various licenses, which were at about the same time transferred in blank to the various saloon keepers as licenses, and these transfers were delivered to the company, and, to the amount of $40,257, reassigned to the Manufacturers' National Bank as security for the money so borrowed. Shortly after the passage of the resolution of April 23d, the attorney of the company was instructed to prepare the authorized assignment of these chattel mortgages. The preparation and execution of this assignment were delayed or neglected until July 1, 1902. The Manufacturers' National Bank, as trustee, had custody of the various transfers of liquor licenses, and of the chattel mortgages under the assignment thereof, until about October 1, 1903, when, pursuant to an order of the supreme court, the temporary receivers in dissolution proceedings redeemed the same by paying the sum of $37,500; $7,500 having been paid on such indebtedness by the company in the month of June preceding. The face value of the chattel mortgages assigned was about $93,423.14. The petitioners in this proceeding in bankruptcy, instituted July 30, 1902, charge that the company, while insolvent, conveyed and transferred all of its property with intent to hinder, delay, and defraud its creditors, by instituting dissolution proceedings, and by procuring therein the appointment of receivers, in whom was vested the property of the company, and that the institution of such proceedings would preclude the petitioning creditors from taking proceedings to set aside the transfer of the chattel mortgages and liquor taxes made as hereinafter stated, as well as preferential payments made on the 26th day of July to J. Henry Dick, a director, stockholder, and creditor of the company, for $695.84; also that the company, while insolvent, and on the 26th day of July, 1902, transferred to J. Henry Dick, a director, stockholder, and creditor of said corporation, and one of the petitioners for the voluntary dissolution thereof, the sum of $695.84, with the intent to prefer him over other creditors, and with the knowledge on his part of the insolvency of said corporation; also that in or about the month of May, 1902, and within four months of filing the petition herein in bankruptcy, the company transferred certain chattel mortgages and liquor tax certificates, aggregating $91,000, to the Manufacturers' National Bank, in trust for the benefit of William Dick and Christian M. Meyer, directors, stockholders, and creditors of the brewing company, with intent to prefer said directors, stockholders, and creditors over the other creditors of said company; also that the company, while insolvent, with intent to prefer the creditors hereinafter named, over the other creditors of said Malcom Brewing Company, transferred certain property, consisting of money, on the several days and to the several persons following:

Thomas Morgan, July 26, 1902....................................... $ 301 70
Freminger Sign Company, July 12, 1902............................. 138 00
S. K. Nester, July 3, 1902.......................................... 3,102 30
J. F. Walsh, June 15, 1902.......................................... 360 00
Freminger Sign Company, June 12, 1902............................ 215 00
S. K. Nester, June 4, 1902.......................................... 3,102 30
Thomas Morgan, June 4, 1902........................................ 311 70
B. H. Turle & Co., May 13, 1902.................................... 3,878 07
S. K. Nester, April 5, 1902......................................... 3,065 76
S. S. Steiner, March 31, 1902....................................... 1,506 02

The petition for the dissolution proceedings in the state court contains the following allegation:

"Second. That your petitioners have discovered that the stock, effects, and other property of said corporation are not sufficient to pay all just demands for which it is liable, or to afford a reasonable security, and that heretofore William Dick brought two several actions on five promissory notes made by said corporation to him for moneys loaned, amounting in the aggregate to fifty-two thousand dollars ($52,000), besides interest and costs, which actions proceeded to judgment, but judgment has not been entered thereon against said corporation, but is likely to be at any moment, and that other creditors of said corporation, particularly Henry Doscher, is about to institute an action against said corporation to recover the sum of twenty-one thousand seven hundred and ninety-eight dollars ($21,798), with interest upon three promissory notes held by him; that the entry of said judgment would so far affect the credit of the company as to practically prevent it from doing business; and that for these reasons your petitioners deem it beneficial to the interests of the stockholders that said corporation should be dissolved."

The petition in the state court also contains a statement of the debts of the company, and an inventory of its property, as it was carried on the books of the company.

The inventory of property is as follows:

Plant consisting of real estate, etc.............................. $420,928 08
Horses, trucks, harness........................................... 17,846 69
Cooperage, kegs, and barrels...................................... 19,424 20
Bar fixtures in brewery........................................... 4,349 99

Book Account, viz.:

Chattels and real estate mortgage account.......... $101,064 49
Loan account to liquor dealers...................... 35,254 29
License account .................................... 44,519 86
Accounts as per lager beer............... $22,529 78
Less discounts ......................... 6,758 93    15,770 85

Accounts as per ale ledger............... $21,874 37
Less discounts ......................... 6,452 94    15,421 43

                                                    212,030 92
Accounts as per bills receivable book............................ 3,009 08
Personal accounts for mdse. sold and loans....................... 25,003 05
Stock account manufactured and unmanufactured................... 44,185 09
Brewers' supplies ............................................... 1,799 87
U. S. revenue stamps............................................. 599 68
Unexpired insurance ............................................. 4,755 19
Ferry tickets ................................................... 26 70
Bottling department inventory.................................... 797 06
Cash in banks and on hand........................................ 2,838 83

                                                    $757,594 42

The specific incumbrances upon such property are stated as follows:

Mortgage by said corporation to the Nassau Trust Company of
Brooklyn, as trustee, to secure bonds of the denomination of
$1,000 each, issued to various persons at the time of the execu-
tion thereof, interest at 6%, amount............................ $200,000 00
Assignments of liquor licenses held by said corporation to the
Nassau Trust Company & Manufacturers' National Bank as col-
lateral securities on indorsements of notes of said corporation,
and discounted by it on them................................ 40,237 57
Assignments of chattel mortgages held by said corporation to the
Nassau Trust Company and to the Manufacturers' National
Bank of Brooklyn, as trustee, to secure indorsements on notes
of said corporation held by it on them........................ 93,423 14
                                                              _____
    Total incumbrances ...................................... $333,660 71

The schedule states the indebtedness of the company as $317,571.57,
exclusive of unsatisfied engagements, and also the mortgage of
$200,000, making the total indebtedness $517,571.57.

The respondents claim that the evidence shows the following state-
ment, based on the valuations both of their witnesses and those of the
petitioning creditors:

Liebmann (creditors' witness):
Land and buildings ............................... $214,000 00
Machinery, etc. .................................. 94,960 00
                                                  _____
                                                              $308,960 00
Amounts as shown by schedule:
    Mortgages and current accounts................. $212,030 00
    Personal accounts and bills receivable.......... 28,000 00
    Stock, supplies, cash, etc...................... 55,000 00   295,030 00
                                                                _____
        Total valuation ...........................             $603,990 00
Coleman (creditors' witness):
Buildings, machinery, etc. (including land, though
    the minutes say excluding land)................ $295,000 00
Schedules show as above........................... 295,030 00
                                                   _____
        Total valuation ...........................             $590,030 00
Taylor (respondents' witness):
Machinery, etc. .................................. $171,965 00
Lamb (respondents' witness):
Land and buildings ............................... $302,300 00
Schedules as above ............................... 295,030 00
                                                   _____
        Total valuation ...........................             $769,295 00
Kleinert (respondents' witness):
Land and buildings ............................... $252,744 00
Frank (respondents' witness):
Machinery ........................................ $110,000 00
Schedules as above ............................... 295,030 00
                                                   _____
        Total valuation ...........................             $657,774 00

The debts being certain, it is claimed that these valuations show
an excess of assets over liabilities ranging from $75,000 to $250,000,
independent of the alleged good will of the business. The petitioning
creditors allege that there is a deficiency of assets, and arrive at the
result by the following method of computation, claimed to be based
upon the evidence and law applicable to the case:

Liebmann's estimate: Real estate, cooperage, everything except
  accounts, stock, horses, and wagons........................... $308,960 00
Stable contents, Frank's estimate............................... 14,481 00
Loan accounts to liquor dealers:
  . Offerman's estimate.........................90% worth 75%
     .........................10% " 40% 25,106 00
Ale and beer accounts, same estimate:
  Same basis ................................................ 22,302 00
Bills receivable (in full) .................................... 3,009 08
Personal accounts " " ..................................... 25,003 00
Stock account, Liebmann's estimate: 12,500 barrels beer and
  1,000 barrels of ale, $2.50 a barrel........................... 33,750 00
Brewery's supplies (in full).................................... 1,799 57
United States revenue stamps (in full)......................... 599 68
Unexpired insurance ........................................... 4,755 19
Ferry tickets ................................................. 26 20
Bottling department ........................................... 797 06
Cash .......................................................... 2,838 83

    Total ................................................. $442,425 41
Liabilities as per petition........................... $517,571 57
Less debt or loan on chattel mortgage and liquor tax
  certificates .................................... 37,500 00

                                  $480,071 57 480,071 57

    Liabilities over property....................... $ 37,053 16

By a different system of computation, the petitioners show an
excess of liabilities to the amount of $57,708.80.

The petitioning creditors exclude from consideration the amount of
the liquor licenses and chattel mortgages assigned, on the ground that,
having been pledged under such circumstances as to create a pref-
erence, they cannot be included in the assets; and the amount
($37,500) for which they were pledged is also deducted from the liabili-
ties. If this contention could be maintained, the insolvency would be
proven. Is such deduction authorized? It is urged that the property
involved in the assignment of the liquor tax licenses and chattel mort-
gages, amounting to $133,666.70, must be deducted from the amount
of the estate, for the reason that it was not the property of the com-
pany at the time the petition was filed. Such securities were not con-
veyed, transferred, concealed, or removed, or permitted to be con-
cealed or removed, with intent to hinder, delay, or defraud the credit-
ors of the company, or any of them; nor is there any allegation to that
effect. The charge is that they were transferred preferentially by
the company while insolvent. Subdivision 25 of section 1, Bankr.
Act [U. S. Comp. St. 1901, p. 3420], provides:

"'Transfer' shall include the sale and every other and different mode of
disposing of or parting with property or the possession of property, abso-
lutely or conditionally, as a payment, pledge, mortgage, gift, or security."

The transfer was a transfer for the purpose of security.

Subdivision 15, § 1, provides:

"A person shall be deemed insolvent within the provisions of this act
whenever the aggregate of his property, exclusive of any property which
he may have conveyed, transferred, concealed, or removed, or permitted to
be concealed or removed, with intent to defraud, hinder, or delay his cred-
itors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

Subdivision 15, as regards the property to be excluded, has evident reference to the act of bankruptcy stated in section 3a (1) and not to the acts of bankruptcy relating to preferences. Where property is transferred in fraud of creditors, the statute contemplates that the bankrupt shall not have the benefit of its valuation in determining whether he is insolvent. Where property is transferred in payment of or as security for a just debt, the mere fact that it may involve a preference in bankruptcy, should bankruptcy proceedings be instituted, does not exclude it from consideration in determining the debtor's solvency. The property in the present case was pledged as security in due course of business, pursuant to a resolution of the board of directors passed at an earlier period, and did not involve fraud; nor is that charged. The computation of the petitioning creditors erroneously excludes a consideration of this property. If it be included, by the petitioners' own computation the company was not insolvent at the time of the various acts of bankruptcy alleged in the amended petition, if the rule for ascertaining insolvency provided by the bankruptcy act be observed. The court is forced to this conclusion by the state of the evidence, and by the technical definition of "insolvency" contained in the act. If it were within the province of the court to forecast the results of marshaling the assets of the company, the statement might be made, safely, that the property will fall far short of equaling the liabilities of the company, unless there shall be some arrangement by which the creditors undertake a reorganization of its affairs. But while experience leaves no doubt that the company was actually insolvent, the condition of its assets makes proof thereof a task of insuperable difficulty for the ordinary litigant. The present situation is peculiar. The company relies upon insolvency, as defined by the state statute, for the purpose of winding up its affairs, and thereafter proves its solvency in this court; that is, the company is solvent in this court, and insolvent in the state court. It is true that the petitioners urge that the statement in writing, as above quoted, made by the directors as the basis of their petition for proceedings for dissolution, is prima facie evidence of the insolvency of the corporation, and sufficient to sustain a finding against it on that issue, unless overcome by countervailing proof, and, in support of this proposition, cite In re Lange (D. C.) 97 Fed. 197. If the suggestion be that this statement shifts the burden of proof, it cannot be accepted, as that burden remains with the petitioners to the end. If it be admitted that this statement of the directors may be regarded as that of the corporation itself, within the meaning of the decision cited, nevertheless it is to be observed that the petition was accompanied by an inventory which shows an apparent surplus of assets to the amount of $240,000. Moreover, the statement in the petition closely follows the words of the statute, and such meaning is to be given to the statement as has been judicially attributed to the statute itself. The respondents insist that the meaning of the statute is shown in the opinion in Sterrett v. Bank, 46 Hun, 26, where it is stated:

"Solvency imports adequate means of a party to pay his debts, which embraces within its meaning the opportunity, by reasonable diligence, to convert and apply to such purpose. In other words, a person is deemed

insolvent who at the time in question is unable to pay his debts in the ordinary course of business."

This decision involved proceedings by attachment, but is quoted as illustrating the definition of insolvency in Re Lenox Corp., 57 App. Div. 515, 68 N. Y. Supp. 103. Such is not the meaning of "insolvency" as the term is used in the present bankruptcy act. Duncan v. Landis, 106 Fed. 839, 45 C. C. A. 666; In re Gilbert (D. C.) 112 Fed. 951. While the statute of the state has not been definitely interpreted as claimed by the respondents, yet the decision in Re Lenox Corp. tends in that direction, and it is considered that the language of Judge Bradley in Sterrett v. Bank is properly applicable to the statute under which the dissolution proceedings were initiated. Moreover, there has been an extended research into the affairs of the company in the present proceeding in bankruptcy, and the evidence presented with reference to the various items of assets shows an excess of such assets over liabilities. Therefore it is concluded that the statement of the directors, rightly interpreted, taken with the inventory shown in the schedules, is not sufficient to overcome the detailed evidence presented upon this hearing.

It follows from these views that the petition must be dismissed.