EDWARD H. ZIEGLER, Trustee, *vs.* RACHEL A. THAYER.

MAY 27, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(*1*) *Bankrupt Act. Insolvency. Fair Valuation.*

Under the provisions of the federal bankruptcy act, Section 1, subdivision 15, insolvency turns on what is a fair valuation of the property; hence in a

proceeding to set aside a transfer brought by a trustee in bankruptcy, evidence offered by the bankrupt as to the value of his property "to him" was properly excluded.

(*2*)  *Bankrupt Act.   Insolvency.   Fair Valuation.*

Fair valuation of property within the contemplation of the bankrupt act relative to insolvency of the alleged bankrupt would be the present market value, rather than the value to the bankrupt or the value of such property at a forced sale.

(*3*)  *Bankrupt Act.   Preferences.*

Transfers of a bankrupt's property within the four months period, which would be voidable as a preference, cannot be rendered valid, by reason of a parol agreement for security made prior to the commencement of said period.

(*4*)  *Bankrupt Act.   Preferences.   Mortgages.   Record.*

The federal bankruptcy act, Section 67, clause "a," provides "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate."

Gen. Laws, 1909, cap. 258, § 10, provides that no mortgage of personal property shall be valid except as between the parties, unless possession is taken or it is recorded in accordance with the statute within five days of its date:—

*Held*, that as a mortgage would not have availed as against creditors unless recorded in accordance with the statute, a parol agreement to give security was without effect.

BILL IN EQUITY.   Heard on appeal of respondent, and dismissed.

JOHNSON, J.   This cause is before this court on appeal from a decree of the Superior Court in a cause in equity wherein the complainant as trustee in bankruptcy of the estate of Chester A. Thayer prayed that a certain chattel mortgage and a deed of assignment of certain book accounts from the said Chester A. Thayer to the respondent, his wife, be set aside and the respondent ordered to deliver to the complainant all books, papers and ledger cards and all other evidences of existence of said rights and credits and choses in action assigned to her as aforesaid, now in her hands and possession.

The answer of the respondent admits that she is the wife of said Chester A. Thayer; that on the 18th day of Novem-

ber, 1910, the said Chester A. Thayer was duly adjudged a bankrupt by the District Court of the United States for the State of Rhode Island on an involuntary petition by his creditors, dated October 3d, 1910, and duly filed in said court; that the complainant was duly elected trustee of the said bankrupt estate of said Chester A. Thayer by his creditors on the 13th day of January, 1911, that he has duly qualified as such trustee and has entered upon the execution of the duties of said trust; that on the 17th day of September, 1910, said Chester A. Thayer conveyed by chattel mortgage to said respondent certain goods and chattels described in said mortgage as of the value of $1,000; that said conveyance was made to secure the payment of the sum of $900 and was duly recorded as required by law; that on said 17th day of September the said Chester A. Thayer by deed of assignment assigned to said respondent certain rights and credits and choses in action due to him from various parties fully listed and described in said deed of assignment of the face value of $3,000 to further secure said respondent for moneys which the respondent alleges and claims that her husband, said Chester A. Thayer, was owing to her at the date of said assignment and of said chattel mortgage.

Said respondent admits that she has in her possession the books, papers and ledger cards containing the accounts of persons, firms and corporations indebted to said Chester A. Thayer at the date of the assignment of said accounts to the respondent.

Said respondent denies the following allegations in the bill of complaint:

"Sixth: That there was no consideration for said mortgage and deed of assignment moving and passing at the time of the delivery of said papers by the said Chester A. Thayer to the respondent, from said respondent to said Chester A. Thayer; and the only consideration for said transaction was an alleged pre-existing debt due and owing to the respondent by said Chester A. Thayer.

"Seventh: That by said chattel mortgage and deed of

assignment said Chester A. Thayer conveyed and mortgaged to the respondent the whole of his estate of which he was then seized and possessed, except certain household effects which were exempt from attachment.

"Eighth: That at the date of the delivery of said mortgage and assignment to the respondent by said Chester A. Thayer the said Chester A. Thayer was involved in debt to a large amount to wit: to the amount of several thousand besides the alleged indebtedness to the respondent; he was then insolvent and unable to pay his creditors; and said conveyances are inequitable and a fraud upon his other creditors and were made to defraud his general creditors and to prefer his said wife as an alleged creditor over his other and general creditors."

And said respondent further answering denies the allegations made in said bill that said Thayer did convey as alleged the whole of his estate and denies that said Thayer was insolvent at the time of the alleged transfer.

Said cause was heard in the Superior Court April 10, 1911, upon bill, answer and proof and on April 12, 1911, a decree was entered "that said chattel mortgage dated the 17th day of September, A. D. 1910; and said deed of assignment of the same date, given by said Chester A. Thayer to Rachael A. Thayer, be, and the same hereby are, set aside; and that the respondent be and she is hereby ordered to deliver to the petitioner, all books, papers and ledger cards, and evidences of said choses in action, assigned by said Chester A. Thayer to her the said Rachel A. Thayer as aforesaid; and that the respondent be and she is hereby ordered to account to the petitioner for all moneys collected by her or by her agent or attorney on account of any of said rights and credits."

From this decree the respondent appealed, assigning as reasons therefor: "First, because said decree is wrong and erroneous in law and ought to be reversed and rendered in favor of the respondent. Second, because said decree is wrong in fact. Third, because said decree is against the law.

Fourth, because said decree is against the evidence and the weight thereof. Fifth, because said Superior Court erred in not admitting certain evidence going to show the solvency of Chester A. Thayer. Sixth, because said Superior Court erred in not finding that there was present and adequate consideration for the transfer of property and assignment of accounts to said Rachel A. Thayer."

(1) Upon the evidence allowed by the justice of the Superior Court, Chester A. Thayer was clearly insolvent upon September 17, 1910, the date of the mortgage and assignment to his wife. Respondent's counsel admits this, but claims that the justice erred in ruling out evidence, which he says would have proved Thayer to have been solvent upon said date.

After testifying that on the date of the mortgage and assignment he owed less money than his schedules show as liabilities, Mr. Thayer was asked certain questions by counsel for respondent. On page 36 the record reads: "Q. 3. Was the value of your tangible property on the date of the transfer to your wife, the value to you—— THE COURT: 'The value to him.' Q. 4. Was the value of his tangible property, was the value to him not to others, was the value to him larger or smaller than your schedule value of the same property. THE COURT: Why do you put the question in that way? MR. CRANE: The purpose is this: The value of property to Mr. Thayer might be much more than it would be to me, or at the auction value, or to others. In arriving at a fair value of his property, the decisions are that he can put such value as is fair under the circumstances, not having in view an auction sale or a forced sale. THE COURT: That might be the rule as to market price rather than the value to him. He might have some very exaggerated opinion. It might be a very peculiar value to him. You cannot fix values that way." Questions followed asking the value *to him* to use in his business of his automobile; of the plans and specifications spoken of in the mortgage; of the accounts receivable; of his household furniture, and of his wearing apparel. Question 14, was as

follows: "Did some of your property have a working value to you which would give you an income from the use of it, a larger income, larger than the average man, or the average purchaser of such property would get from the use of the same property after the same manner?" All the above questions were ruled out. Their exclusion was proper. The value of the property to Thayer was not the proper test of fair valuation. Insolvency is defined in Section 1, subdivision 15 of the bankruptcy act, as follows: "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Insolvency under the definition contained in this section turns on what is a fair valuation of the property. *In re Gilbert*, 112 Fed. 951. Fair valuation has been held to be the present market value, and not the amount which might be realized from a forced sale of the property, *Duncan v. Landis*, 106 Fed. 839.

(2)    It has been held that the valuation for the test of solvency or insolvency upon an issue as to whether a chattel mortgage was preferential, must relate to the conditions, as a going concern, when the alleged preference was given, and not to the mere dead matter of the plant after bankruptcy has intervened. *Butler Paper Co.* v. *Goembel*, 143 Fed. 295.

In the case of *In re Hines*, 144 Fed. 142, the court, in considering what constitutes a fair valuation, said: "As it respects property considered in a commercial sense, I can conceive of no better or surer standard by which to arrive at a fair valuation than the market valuation: that is, what the property will probably bring, or is worth, in the general market to-day, where everybody buys. It could not be what it is worth to one person or to another under special circumstances, or having special use for a particular article, but what it is worth as a marketable commodity at a

given time with no special conditions prevailing other than affect the market generally in the locality where the commodity is for sale."

The mortgage and transfer were given to secure the claim of Rachel A. Thayer for money advanced to Chester A. Thayer at various times from May to August, 1910, amounting in all to $1,400.

Rachel A. Thayer testified: "Q. 5. What was the entire, the agreement between you and him as to these loans and security? Ans. It was agreed that I should give him money from time to time up to a certain amount, and that he would give me security for the same." She testified that he did not give her any notes for any of these loans and that she kept account of them on a piece of paper; that each time she gave him any she would add that to the other.

It is not claimed that any consideration passed on the date of the execution of the mortgage and transfer. Chester A. Thayer testified: "Q. 62. Your wife loaned you certain money? Ans. Yes, sir. Q. 63. According to the testimony here of the preceding witness? Ans. Yes, sir. Q. 64. Was there or was there not an agreement with her, with regard to giving security? Ans. There was. Q. 66. What was that agreement? Ans. That I was to give her security for money that she loaned me. Q. 67. Give the details of your entire agreement with her? Ans. She advanced me money at different times and I was to give her security for the amount of money that she had advanced me. Q. 68. Were there any notes given, up to the time of the giving of the security? Ans. No, sir. Q. 69. Was your agreement as to giving security carried out on the 17th of September? Ans. It was."

(3)   We cannot believe that while transfers of the bankrupt's property made within the period of four months before the bankruptcy may be avoided, such transfers can be rendered valid by reason of a parol agreement made prior to the commencement of said period. As the court said In re Dismal Swamp Contracting Co., 135 Fed. 415, 417: "Once let it be

understood that conveyances made within four months of bankruptcy can be successfully attacked, while those made in pursuance of a pre-existing bona fide agreement will be upheld, and the entire policy of the bankrupt law, in so far as it undertakes to specify the time within which preferences can and cannot be assailed, will be frustrated and destroyed. The door for fraud would be left wide open, and creditors would never know when they were safe in dealing with the estates of their debtors. A condition, alike destructive of the interests of creditors and bankrupts, would be brought about, and a harvest for dishonest debtors afforded. The debtors knowing the circumstances under which they make the preferences, their general creditors to be affected thereby would be entirely at their mercy."

In the case of *In re Ronk*, 111 Fed. 154, the court, p. 156, said: "It cannot be successfully maintained that the verbal agreement created a valid lien as against the claims of the creditors; and, if it did not create a valid lien, then, by the terms of the bankruptcy act, it cannot be enforced as a lien entitled to priority over other claims. It created no lien,—nothing but a secret equity, possibly good as between mother and son, but certainly not valid and enforceable to the prejudice of the claims of creditors. The bankruptcy act embraces payments for the purpose of giving preferences, as well as the giving of securities for such purpose; and it would hardly be contended that a preference by way of payment, otherwise invalid, would be valid because the debtor had agreed at the time it was contracted to pay the debt, without defalcation, on a specified day. The doctrine contended for by the mortgagee would necessarily invite and inevitably lead to the defeat of the bankruptcy act. It would be easy in every case where it was desired to thwart the operation of the law and to give a preference to a relative or a friend to make an agreement at the time the money was loaned or the credit given for a mortgage to be executed in the future. If the law can be thus evaded, it would be an open invitation to every person loan-

ing money or giving credit to the bankrupt to enter into such a verbal agreement with him. Such agreements, if held valid, would create secret liens upon the bankrupt's property, and would enable him in every case to effect the very objects which it was the purpose of the bankruptcy act to prevent. Such agreements would undoubtedly be made in every case where the debtor wished to secure relatives and friends to the detriment of his other creditors."

(4) The assignment as well as the mortgage is claimed to have been made as security for the prior loans. Gen. Laws, R. I. 1909, cap. 258, § 10, provides: "No mortgage of personal property hereafter made shall be valid as to the assignee in insolvency of the mortgagor, or any other person except the parties thereto and their executors and administrators, until possession of the mortgaged property be delivered to and retained by the mortgagee, or the said mortgage be recorded in the records of mortgages of personal property in the town or city where the mortgagor shall reside, if in this state; and if not in this state, then in the town where the property is at the time of making said mortgage; which said recording or taking and retention of possession as aforesaid shall be made or taken within five days from the date of the signing thereof. . . ." A mortgage given at the time of the loan would not have availed against other creditors of Chester A. Thayer unless recorded in accordance with said statute. A parol agreement to give security, could certainly have had no greater effect than a mortgage actually given, but not recorded as required by the statute. In *re Ronk*, *supra*, the court cited a statute of Indiana, the case having arisen in said state, as follows: "No assignment of goods by way of mortgage shall be valid against any other person than the parties thereto where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged as provided in case of deeds of conveyance and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof," and said: "If the mort-

gage had been executed on November 14, 1900, and had not been recorded until March 29, 1901, manifestly it would have been invalid as against creditors. It is difficult to perceive how, in view of this statute, a secret claim or equity can be held to have been created by the verbal agreement, when a mortgage or assignment actually executed by the parties at the time, if unrecorded, would have been invalid as against creditors. It is apparent that it was the purpose of the legislature to allow no valid claim, lien, or secret equity to be created on goods unless public disclosure was made either by delivery of the goods to the assignee or mortgagee and the retention thereof by him, or by recording the assignment or mortgage within 10 days. To hold otherwise would be to defeat the beneficial effect of the recording statute." Section 67, clause "a" of the bankruptcy act provides: "Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate."

The Superior Court did not err in not finding that there was present and adequate consideration for the transfer of property and assignment of accounts to said Rachel A. Thayer.

The appeal is dismissed. The decree below is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Washington R. Prescott, for complainant.*

*Mendell W. Crane, for respondent.*