## In re BURMAN et al.

(District Court, D. Massachusetts. November 15, 1913.)

### No. 18,949.

1. BANKRUPTCY (§ 381*)—COMPOSITION—CONFIRMATION—JURISDICTION.

Where certain bankrupt members of a firm for some time prior to the filing of a bill in the state court for the appointment of a receiver knew that they were about to fail, and thereupon collected all the money they could, paid a certain sum to near relatives, and divided the balance between them for their personal use, with knowledge that the firm was insolvent, such acts, though not concealed and appearing from the firm's books, constituted fraudulent conveyances of the firm's assets, which were sufficient to bar a discharge in bankruptcy, and hence deprived the bankruptcy court of jurisdiction to confirm a proposed composition, though such confirmation would be for the best interests of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

2. BANKRUPTCY (§ 381*)—COMPOSITION—OBJECTIONS—AMENDMENT.

Where a creditor of bankrupts objected to a composition on the ground that the latter had been guilty of a fraudulent concealment of assets, but it appeared that their misconduct consisted of a fraudulent misappropriation of funds of the firm with knowledge of its insolvency and contemplated bankruptcy, which acts were disclosed by the firm's books and were fraudulent conveyances rather than a fraudulent concealment of assets, the creditor was entitled to amend his objections to conform to the proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. In Bankruptcy. In the matter of bankruptcy proceedings of Simon Burman and Benjamin Welling, doing business as the Puritan Clothing Company. Application for confirmation of composition. Denied.

Bates, Nay & Abbott, of Boston, Mass., for objecting creditors.

Friedman & Atherton and A. K. Cohen, all of Boston, Mass., for bankrupts.

MORTON, District Judge. Burman and Welling, the alleged bankrupts, have filed an offer in composition proposing to pay their unsecured creditors 40 per cent. of the debts proved. This offer was referred to the referee who, after hearing the offerors and the objecting creditor, has reported in favor of confirming the composition. A single ceditor, having a claim of about $400, appears in opposition to such confirmation.

The first ground of objection is that the composition proposed is not for the best interests of the creditors; in other words, that the creditors will obtain a larger dividend by the regular course of administration. The referee has found against the objecting creditor on this ground, and I agree with his conclusion.

[1] The second ground of objection is that the bankrupts have been guilty of acts which would be a bar to their discharge. If so, the court has no power to confirm the composition. Re Comstock (D. C.) 19 Am. Bankr. Rep. 65, 154 Fed. 747. Many such acts are alleged of which I find it only necessary to consider one, viz., that based upon the alleged taking by the bankrupts, from cash belonging to the firm, of sums aggregating $909 each, on the 7th and 10th of December, immediately preceding the appointment of receivers by the state court on December 11, 1912.

There is little controversy as to the facts surrounding these transactions. On December 5th, $1,000 in cash was paid by the bankrupts to L. Wilensky, brother of the bankrupt Welling; on December 7th, the defendants divided between them $1,622 cash belonging to the firm; and on December 10th (the same day the petition for the appointment of a receiver was filed in the state court), the defendants divided between themselves the further sum of $197 cash belonging to the firm —making the total amount received by each from the two payments $909. Counsel for the objecting creditor stated, as his claim before the referee:

"That he (the bankrupt Welling) scraped in all the money he could get in and rake in, from the first of December on, say until he got $2,600 or $2,800 in cash, then he paid his brother $1,000, and divided the rest between himself and his partner and went away."

Counsel for the bankrupts said:

"We admit those facts. They are not concealed. They appear on the books."

The bankrupt Welling further testified, in regard to the division of cash between himself and his partner on December 7th ($811 to each), that what he received was in repayment of a loan made two or three years before; that "it was not on any particular loan"; that on December 7th, and again on December 10th, he took all the money there

was and divided it between himself and his partner; that on November 6th he had paid his uncle, of the same name as himself, two payments of $500 each; that shortly before the receivership the bankrupts accumulated cash and had more than $2,600 in cash in the safe, which was used in the above payments to the bankrupts and to L. Wilensky, the brother; that all firm creditors were paid except the merchandise creditors and the trust company; that the $909 which he himself received, and which comprised, as he knew, one-half of all the cash the firm had, except an insignificant sum, was used in paying his personal bills; that he was unable to state any person to whom, or any account on which, this money was paid.

Burman testified, as to the $909 which he got from the firm on December 7th and 10th, that he did not deposit it in any bank; that he used it to pay off some personal bills, including $500 to a young man who worked in his store; that the money was taken by himself and Welling because they expected trouble and knew that receivers were to be appointed at that time; that it was because receivers were to be appointed that he and Welling took all the money there was in sight and divided it; that he did not know the firm was insolvent until the inventory was taken by the receivers in January, 1913.

It is clearly apparent that, for some time before the filing of the bill in equity praying for the appointment of a receiver, the alleged bankrupts, who seem not to have been on unfriendly terms with each other, were stripping their partnership of cash as fast as it came in, were paying large sums to near relatives, and were keeping for themselves whatever cash remained; that they did this, understanding and having in view that legal proceedings for a receivership and the winding up of the firm were about to be instituted; that the money was taken from the firm's assets for the personal use and benefit of the bankrupts and to prevent it from going into the hands of the receiver; that the firm received no present consideration for the money taken from it; and that neither of the partners received any present consideration for the payments alleged to have been made by them individually from the money in question. The firm was at this time insolvent. Active members of an insolvent firm are presumed to be aware of its insolvency (Re Gilbert [D. C.] 112 Fed. 951), and even without such a presumption the conduct of the defendants shows that they knew of the insolvency in this case.

All the transactions appear on the books and were disclosed to the receiver. It is strongly urged that this openness is sufficient evidence of good faith, and, in connection with the testimony of the bankrupts, rebuts the strong inference of fraud which the conduct of the parties affords. The bankrupts are interested witnesses, and their assertions of honesty and good intentions are to be carefully scrutinized and weighed. Oxford Iron Co. v. Slafter, 13 Blatchf. 455, Fed. Case. No. 10,637. Some, at least, of the crucial entries in the books appear not to have been altogether regular, and throughout their testimony (which I have carefully examined) there repeatedly occur facts or expressions of a suspicious character. For the two partners in an insolvent firm, on the eve of a receivership, to take all the cash, divide it between themselves, and not turn it over to the receiver or creditors,

is, upon its face, such a fraudulent transaction as to require clear, reliable, and convincing evidence of good faith to justify it. I do not think, in spite of the referee's finding to the contrary, that such evidence exists in this case. It is unnecessary to determine whether the application, by the partners in an insolvent firm, of partnership assets to their individual debts, is a conveyance in fraud of the creditors of the firm.

I therefore find and rule that the aforesaid sums, aggregating $909 each, taken by the bankrupts from the firm assets on December 7 and 10, 1912, were received and kept by each of them with the actual intent thereby to defraud the firm's creditors by taking said sums for their own personal use and benefit and withholding them from the receiver and the creditors of the firm; and that the taking of said sums was a transfer, removal, or concealment of property of the bankrupts, made with intent to hinder, delay, and defraud their creditors, and is a bar to a discharge. I do not find that said sums were taken by the bankrupts with the intention of applying the same to their personal indebtedness. They took the money intending to use it for whatever they saw fit.

There is much reason to believe that some of the other grounds of objection to the composition are well taken, but it is unnecessary to go farther because the points decided are sufficient to dispose of the case.

The composition appears to be for the best interests of the creditors, but it cannot be confirmed.

"This may be regarded as working in some cases a hardship to creditors, since a fraudulent bankrupt will often pay a dividend larger than may be secured upon full administration, and since it may be more profitable to condone fraud than to expose and punish it. But the policy of the act, that a fraudulent bankrupt shall be denied a discharge even if creditors lose thereby, is sound if the question of bankruptcy administration be broadly considered. A general readiness of creditors to condone fraud, and to accept compromises which yield profit to bankrupts, is a chief encouragement to schemes of fraudulent bankruptcy. To permit even a single creditor to defeat it tends to make such a scheme more difficult of fulfillment, and thus to discourage it." Brown, J., in Re Comstock (D. C.) 19 Am. Bankr. Rep. 65, 154 Fed. 747.

See, too, to the same effect, Re Godwin (D. C.) 10 Am. Bankr. Rep. 253, 122 Fed. 111.

[2] The transactions in question are alleged in the objections to the confirmation of the composition as fraudulent concealments, and not as fraudulent conveyances. Inasmuch as they were entered upon the books and were disclosed by the respondents to the receivers, there may be doubt whether they constitute fraudulent concealments or fraudulent conveyances. The objections, being meritorious and having been fully considered both by the referee and by the court, ought not to fail on account of defective pleading. The objecting creditor may amend the specifications of objection.

Upon such amendment the application for confirmation of the composition is denied, with costs.