E. E. BALDWIN *v*. WILLIAM FLASH ET AL.

| 59 | 61 |
| e89 | 204 |
| 89 | 205 |

1. DEED OF TRUST. *Fraud in law. Surrender of goods to trustee.*
   Before third persons' liens attach, the surrender of a stock of goods covered by an unrecorded trust deed which is fraudulent in law, under the belief that the instrument is valid, will, in the absence of actual fraud, vest title in the trustee.

2. SAME. *Grantor's possession. New written assignment.*
   Such title is not vitiated by the fact that the grantor made a written assignment to the trustee a day before the surrender, and employed the interval in selling for his own benefit, if the object of the delay was to endeavor to pay the trust debt.

3. SAME. *Appropriation of payments. Rights of factors. Advances.*
   After such surrender the debtor cannot appropriate to payment of the trust debt cotton which the beneficiaries, his factors, have applied, with his knowledge, in the customary course of the business, to an account for advances made to him on the faith thereof.

APPEAL from the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

After this claimant's issue between the appellant, a trustee, and the appellees, the grantor's creditors, who attached goods covered by the trust deed, was remanded for a new trial (58 Miss. 593), the plaintiffs added, by leave of court, over the claimant's objection, the issue that the trust debt was discharged after the original issue was formed, by payments prior and subsequent to the levy. Besides the testimony on the former trial, there was here proved the assignment reciting the surrender of the goods to the trustee by the grantor, and the latter's attempted application to the trust deed of cotton held by the beneficiaries, commission merchants in New Orleans, as described in the present opinion. On this trial, the jury were instructed for the appellees that if the grantor directed the proceeds of the cotton to be applied to the trust debt before he received notice from the *cestuis que trust* of an appropriation thereof to the account, the credit should be upon the former, and that if, when the assignment was executed, there was an agreement that the assignor was to remain in possession of the goods, selling them for his own

benefit until the assignee took possession, that was a reservation of a benefit to the former which made the transaction fraudulent, and also as follows: 2. That if the deed of trust covered the stock attached and all goods to be put in the store, in possession whereof the grantor remained after its execution by consent of the trustee and beneficiaries, conducting the business, as formerly, for his own profit, it is fraudulent and confers no title, whether the trustee was, at the time of the levy, in possession or not; and 3. That if the deed of trust and the assignment were designed to hinder, delay, or defraud creditors, the jury would find for the plaintiffs, and, in determining this, they should consider all the facts and circumstances surrounding their execution and enforcement.

*Wells & Williamson*, for the appellant.

1. If any part of the trust debt was due at the time of the levy, the trustee must prevail. No subsequent act of the grantor can render the attachment valid. Permission to introduce the issue of payment after the seizure was erroneously given. *Wolfe* v. *Crawford*, 54 Miss. 514; *Butler* v. *Lee*, 54 Miss. 476. Moreover, payment was not proved. Application of the proceeds of cotton on which the factors had a lien for advances could not be controlled by the debtor. *Brander* v. *Phillips*, 16 Peters, 121; *Matthews* v. *Menedger*, 2 McLean, 145; *Winne* v. *Hammond*, 37 Ill. 99. The question must be determined by the law of Louisiana, where the contract was to be executed and where the cotton was situated. *Brown* v. *Freeland*, 34 Miss. 181; *Andrews* v. *Pond*, 13 Peters, 65; Story Confl. Laws, § 280; Wharton Confl. Laws, § 311. By the Civil Code of Louisiana, art. 3214, the factors could control the appropriation. In addition, however, the course of business between the parties, and the grantor's contract and surrender of the goods, preclude him from now changing the application made.

2. The mortgage of the stock of goods, remaining with the mortgagor for sale and replenishment, so as to make it attach to substituted goods, was valid when the mortgagee took possession before the creditor acquired his lien by levy; and the written assignment to the trustee, at the time of the surrender of possession, was sufficient alone to vest title in the claimant,

if the transaction was free from fraud, and the mere transfer of possession, for the trustee to proceed under the trust deed, would defeat the attaching creditor. *Summers* v. *Roos*, 42 Miss. 749, 785 ; *Harman* v. *Hoskins*, 56 Miss. 142 ; *Rowley* v. *Rice*, 11 Met. 333 ; *Moody* v. *Wright*, 13 Met. 17, 32 ; *Williams* v. *Briggs*, 11 R. I. 476 ; *Cook* v. *Corthell*, 11 R. I. 482 ; *Rowan* v. *Sharps' Rifle Manuf. Co.*, 29 Conn. 282 ; *Walker* v. *Vaughn*, 33 Conn. 577 ; *McCaffrey* v. *Woodin*, 65 N. Y. 459, 463 ; *Gregg* v. *Sanford*, 24 Ill. 17 ; *Farmers' Loan & Trust Co.* v. *Commercial Bank*, 11 Wis. 207 ; *Brown* v. *Webb*, 20 Ohio, 389 ; *Morrow* v. *Reed*, 30 Wis. 81 ; *Foster* v. *Saco Manuf. Co.*, 12 Pick. 451. The instructions overlook the surrender of the goods to the trustee, and for this the cause must be remanded, for the error is not cured by other charges.

*W. C. Wells*, on the same side, argued orally.

*Shelton & Crutcher*, for the appellees.

Errors in some of the charges are cured by the others, and, taking the instructions as a whole, they properly present the law of the case. The trust deed was void. *Baldwin* v. *Flash*, 58 Miss. 593. Surrender, with the new writing, could not cure the fraudulent instrument. The assignment, if regarded as an independent transaction, is fraudulent by reason of the debtor's continued possession. *Hilliard* v. *Cagle*, 46 Miss. 309 ; *Joseph* v. *Levi*, 58 Miss. 843. It is immaterial that the agreement which vitiates the instrument does not appear on its face, for it becomes part of it if made at the time of its execution. *Dunning* v. *Mead*, 90 Ill. 376 ; Bump Fraud. Con. 126. Shortness of time does not affect the question, but the assignment is avoided by the contract for the grantor's possession and acts of ownership. *Harman* v. *Hoskins*, 56 Miss. 142 ; *Robinson* v. *Elliott*, 22 Wall. 513. Delivery of the stock alone does not pass title. That is effected by the contract, which, in this case, whether it was the deed or assignment, was fraudulent in fact. On this issue the verdict is manifestly right, and will therefore be sustained, although the court may have erred in admitting evidence that the fraudulent trust deed was paid, for the latter issue was immaterial unless the security was valid. Without conceding the question of payment, its discussion is pretermitted.

*S. M. Shelton*, on the same side, made an oral argument.

*M. Green*, on the same side, argued orally, and filed a brief.

1. Sale of goods with intent to defraud is void. Fraud vitiates whatever it enters. Subsequent acts of the parties to execute the fraudulent trust deed partake of its vice. Possession under a fraudulent deed confers no title. The so-called assignment was merely written evidence of possession under the deed of trust. It is absurd to argue that a fraudulent deed is valid if possession is acquired under it, for possession is an element of the deed. A distinct assignment could have been made only to ward off creditors from the mortgage, which was valid between the parties, although fraudulent. *Blake* v. *Blake*, 53 Miss. 182; *Mackie* v. *Cairns*, 5 Cowen, 547, 579. The trustee, who induced the attachment by claiming under the trust deed, cannot afterwards assert a different title. *Cocke* v. *Kuykendall*, 41 Miss. 65; *American Ins. Co.* v. *Mahone*, 56 Miss. 180; *Roach* v. *Brannon*, 57 Miss. 490, 504. A new conveyance could not be made without a cancellation of the old one, or without a previous reconveyance of title to the grantor. That a mortgage on a changeable stock of goods with power of sale is valid, if the mortgagee takes possession before a lien attaches, is not the rule in this State. The deed sustained in *Summers* v. *Roos*, 42 Miss. 749, 782, was declared fraudulent in *Hilliard* v. *Cagle*, 46 Miss. 309, and the latter doctrine is applied in the cases of *Roach* v. *Brannon*, 57 Miss. 490, 505, and *Joseph* v. *Levi*, 58 Miss. 843.

2. Under our Statute, Code 1871, § 2295, the grantor was owner of the property, which was subject to levy until the trustee's sale. *Carpenter* v. *Bowen*, 42 Miss. 28; *Byrd* v. *Clarke*, 52 Miss. 623. The case of *Butler* v. *Lee*, 54 Miss. 476, in so far as it holds that no levy can be made after breach of the condition, should be reconsidered. In other States, under like statutes, it is held that the sheriff has the right to possession. *McConeghy* v. *McCaw*, 31 Ala. 447. Attachments must be executed by taking the property. Code 1871, §§ 1434, 1435. So that the case of *Butler* v. *Lee*, *ubi supra*, which was an execution, even if correct, is inapplicable. The case of *Wolfe* v. *Crawford*, 54 Miss. 514, only sustains a

bailee's lien, which depends on possession, and does not declare the levy void. The claimant, however, by accepting payment waived the breach of the condition. *West* v. *Crary*, 47 N. Y. 423; *Chalker* v. *Chalker*, 1 Conn. 79; *Stadeker* v. *Jones*, 52 Miss. 729; Jones on Mortgages, § 889. It was proper, there-. fore, to allow the plaintiffs to prove the payment. In this State the debtor has the right to appropriate, which continues in him until he ratifies his creditor's application. *Neal* v. *Allison*, 50 Miss. 175. This is the civil law. 1 Pothier on Obligations, 422. It is not affected by factor's liens in Louisiana. *Windsor* v. *Kennedy*, 52 Miss. 164. No advances were made on the faith of this specific cotton, and advances generally give no lien. *Brown* v. *M' Gran*, 14 Peters, 479; *Brander* v. *Phillips*, 16 Peters, 121. Crediting the proceeds of the cotton upon the account by the factors in Louisiana is not such an appropriation as will prevent the debtor from applying it most favorably to himself. *Neal* v. *Allison*, *ubi supra*. And there is no evidence of an application of the proceeds to the open account, except the entries of credit.

CHALMERS, C. J., delivered the opinion of the court.

When this case was previously before us (58 Miss. 593), we reversed the judgment of the lower court, because of the exclusion from the jury of the written assignment and surrender of the goods, made and executed by Parkman to Baldwin, trustee for Bickham & Moore, on July 28, 1880. That assignment and surrender having taken place two days before the levy of Flash, Preston, & Co.'s attachment, we declared that Baldwin, in maintenance of his claim, had the right to show this fact, and to invoke the judgment of the jury on the question whether the surrender of the goods to him in payment *pro tanto* of the debt due his clients, was or was not a *bona fide* transaction; we declared that his right to receive the transfer, and Parkman's right to make it, were not diminished or strengthened by the previous unrecorded, and therefore inoperative, trust deed; the execution of that deed, the agreement that it should be withheld from record, the subsequent recording of it, the stipulations of the parties with regard to it, the surrender of the goods under it, and all

the facts and circumstances attending the surrender, should, we held, be submitted to the jury, who should be left free to determine, in view of all the facts, whether the final transfer of the goods, which confessedly took place before the legal rights of any third person had intervened, was made for the honest purpose of paying an honest debt, or was part of a fraudulent scheme, intended, either in its inception or consummation, to defraud other creditors. The fact that the trust deed was invalid as to other creditors, both because unrecorded and because it contemplated a continuing sale and replacement of a stock of goods professedly conveyed by it, did not prevent the parties from curing these defects, their primary intent being an honest one, by recording the deed and surrendering the goods before the rights of third persons intervened. This they did, and it was for the jury to say, under proper instructions from the court, whether in so doing the parties were then paying a just debt, or were consummating a scheme of fraud concocted in the beginning, or then designed, for the entrapping of other persons into selling goods to Parkman, in order that they might be ultimately seized by or surrendered to Bickham & Moore. That the surrender of the goods took place in obedience to the invalid trust deed, and because of its supposed validity, was wholly immaterial, unless the surrender was itself fraudulent. It was well said by the Supreme Court of Massachusetts, in a case strikingly like this in all its features, " The fact that the parties acted (in making a surrender of goods under a mortgage) under a mistaken belief that the plaintiff (mortgagee) had a good title to these goods under the mortgage, does not of itself invalidate another good title, of itself sufficient. Such is commonly the case when an act is held to operate as a ratification or confirmation of some proceeding doubtful, voidable, or void. If the act to which it is applied is voidable only, then it inures by way of ratification ; if actually void, and the subsequent act is of itself sufficient, it inures as an original act." *Rowley* v. *Rice*, 11 Met. 333, 336. That possession surrendered under a void mortgage before the intervention of legal liens by third persons, confers a good title on the mortgagee, in cases free from actual fraud, is well settled. *Rowley* v. *Rice*, *ubi*

*supra; Moody* v. *Wright*, 13 Met. 17; *Foster* v. *Saco Manuf. Co.*, 12 Pick. 451; *Cook* v. *Corthell*, 11 R. I. 482; *Rowan* v. *Sharps' Rifle Manuf. Co.*, 29 Conn. 282; *Gregg* v. *Sanford*, 24 Ill. 17; *Morrow* v. *Reed*, 30 Wis. 81.

The case having been returned to the lower court, the learned judge admitted in evidence the written assignment of the goods to Baldwin, executed on Jan. 28, 1880, but virtually instructed the jury that the instrument was fraudulent, because the parol proof with regard to it showed that, though the paper was delivered on the twenty-eighth, the actual delivery of the goods under it did not take place until the following day, and that in the interval Parkman continued by agreement in possession, selling for his own benefit. This the court held was the reservation of a benefit to himself, and made the assignment fraudulent. This would have been true if the attachment had been levied before an actual surrender of the goods. In such case the written instrument would have been void, because colorable and delusive, but it is shown that the single day's delay that occurred in completing the surrender was for the purpose of giving the debtor an opportunity of ascertaining whether he could not make some arrangement for paying off the debt without a surrender of the goods. It came to an end; the property was turned over, and Baldwin was in open and undisputed possession for two days before the attachment was levied. The written assignment was both unnecessary and ineffectual. The possession taken was the effective thing. If that possession was surrendered on the one side, and received on the other, with the honest intention of paying a just debt, it was not made fraudulent by the unrecorded trust deed of the year before, nor by the unnecessary written assignment of the day before; it could be made fraudulent only by reason of some improper circumstance connected with the transfer itself, or because it was, in the opinion of the jury, but the consummation of a scheme devised and carried out for the purpose of entrapping third persons. The second instruction given for the plaintiffs in attachment omitted to inform the jury that although the trust deed was fraudulent in law the claimant had the right to recover upon the good faith of the surrender of the goods, if

they believed that the same was made in good faith. The instruction marked three was defective, on account of the same omission with regard to the turning over of the goods, which took place the day after the written assignment. These omissions were perhaps supplied by instructions given for the claimant; but the vice contained in the one relating to the holding of the goods for a single day by the assignor after he signed the written transfer, commented upon above, was not.

After Parkman had turned over the goods to Baldwin, he instructed Bickham & Moore to place to the credit of the notes secured by the mortgage the proceeds of two hundred and twenty-nine bales of cotton previously forwarded to them, and remaining unsold in their hands. Before his letter of instructions reached them, they had sold the cotton and placed the proceeds to the credit of their unsecured account against him. Had his instructions been obeyed, the proceeds of the cotton would have extinguished the secured notes and left nothing due on the mortgage. The court below instructed the jury that the credit should have been given to the notes, and this was equivalent to telling them to find a verdict against the trustee, Baldwin, who was not entitled to hold the property if nothing was due on the mortgage debt. While the right of a debtor owing two debts to make appropriations of all payments made by him is undeniable, and while the law will always make the appropriations most favorable to him where none has been made by either debtor or creditor, these rules must give way in cases where to enforce them would work a fraud between the parties. Much of the cotton on hand, the proceeds of which were directed to be applied to the payment of the mortgage debt, had been bought by drafts drawn on Bickham & Moore, which drafts had been honored by them on the faith of the cotton sent forward to meet them. As to this cotton, they had a factor's lien from its reception, with the right to apply its proceeds to the repayment of the drafts with which it was bought; and, as to this much of the cotton, the debtor had no right to direct a different application. Moreover, from the inception of the business between the parties, all payments had been applied to the

unsecured account existing between them, leaving the notes protected by the mortgage outstanding. That such was the basis upon which the business was opened and conducted, and that this was well understood by Parkman, there can be no doubt. On this basis, and with this understanding, he had obtained advances far in excess of the amount stipulated for in the mortgage. That he knew that these advances were made to him on the faith of cotton which was daily being sent forward, and which as received was credited on the open account, is evident from the letter written by him two days before he surrendered the goods, in which he craved indulgence and tendered additional security. The state of the accounts was explained to him before he made the surrender, showing the proposed appropriation of the cotton on hand as all other cotton had been appropriated, and this was not objected to by him. So understanding it, he turned over his goods. His subsequent attempt to pay off the mortgage by applying to it the cotton on hand, was evidently a mere afterthought, approval of which would operate a fraud. If dissatisfied with the manner in which the business was being carried on, he should have notified his creditors before they had advanced him many thousand dollars in excess of the amount specified in the mortgage. He cannot be permitted to do so after he has received their money on a different basis, and has, in recognition of their just rights, surrendered to them the mortgaged property. The instructions of the court on this point were erroneous.

*Reversed and remanded.*