## WESTERN TIE & TIMBER CO. v. BROWN.

### (Circuit Court of Appeals, Eighth Circuit. March 28, 1904.)

### No. 1,953.

1. BANKRUPTCY—TRANSFER TO PREFERRED CREDITOR—PREFERENCE.

Under section 60a of the bankrupt law of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416]), a transfer of the debtor's property may constitute a preference, although the property is not conveyed to the preferred creditor, if the effect of the transfer is to enable the creditor to receive out of the debtor's estate a larger percentage of his claim than others of the same class obtain.

2. SAME—VOIDABLE PREFERENCE—INTENTION TO GIVE—NECESSITY.

An intention on the part of the insolvent to give a preference by means of a transfer he makes is not indispensable to the existence of a voidable preference, under section 60 of July 1, 1898, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416]). It is sufficient that a transfer of the insolvent's property is made, which has the effect to give a preference, and that the party who receives it has reasonable cause to believe that it is intended by the party who procures the transfer, or who gives to the transfer the effect of a preference, that it should have that effect, although the insolvent is innocent of that intention.

3. SAME—VOIDABLE PREFERENCES NOT ALLOWABLE AS SET-OFFS.

Preferences voidable under sections 60a and 60b of the bankrupt law of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St.

---

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. §§ 252, 256.

Supp. 1903, p. 416]), are not allowable as set-offs against claims of the preferred creditors under section 68 (30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), on the ground that the preferences and the claims constitute mutual debts and credits.

4. SAME—VOIDABLE PREFERENCE—FACTS.

A company was hiring laborers to gather ties. The insolvent was operating stores and supplying the men. For many months an inspector had sent a pay roll once in about two weeks to the company, upon which the name of each laborer, his earnings, and the amount furnished him by the insolvent, appeared. The company had uniformly deducted the price of the supplies from the earnings of each man, had sent him a check for the balance, and had sent the insolvent a check for the supplies furnished. The insolvent owed the company more than $20,000, when, within four months of the filing of the petition in bankruptcy, it retained the amount owing the insolvent for the supplies furnished for three months and credited him with this amount, $2,210.73, on its claim against him.

*Held*, this was a voidable preference, and the claim of the company against the estate of the bankrupt should be expunged unless it pays to the trustee the amount it thus withheld.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Eastern District of Arkansas.

F. H. Sullivan, for appellant.

S. M. Stuckey (M. S. Stuckey and H. L. Ponder, on the brief), for appellee.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from an order of the District Court that the claim of the Western Tie & Timber Company against the estate of S. F. Harrison, a bankrupt, be expunged unless the company pays to the trustee the sum of $2,210.73 which the court below found had been transferred to the company by the bankrupt in such a way that the transaction constituted a preference.

A motion has been made to dismiss the appeal, under rule 11 of this court (90 Fed. cxlvi, 31 C. C. A. cxlvi), because the assignment of errors was not filed at the time of, or before, the allowance of the appeal. The record, however, does not establish the fact upon which this motion is founded. The order allowing the appeal, the citation, the admission of service of the citation, and the bond, are dated June 12, 1903. The approval of the bond and the assignment of errors are not dated. All these papers were filed June 16, 1903. As the assignment of errors was filed at the same time as the other appeal papers, the presumption is that it was presented to the court with them when the appeal was allowed, and the motion to dismiss is denied.

Harrison was adjudged a bankrupt on February 24, 1903. Prior to that time he owned some merchandise in two stores, and he was engaged in forwarding the work of gathering ties from the lands of the tie company, and in selling supplies to the laborers engaged in this work. Once in two or three weeks an inspector sent to the company a pay roll upon which the name of each workman, the amount owing to him for his services, and the price of the supplies which Harrison had furnished him, appeared. The company uniformly deducted from the wages due each workman the price of the supplies Harrison had deliv-

ered to him, sent the workman its check for the balance, and sent Harrison the price of all the supplies he had furnished to the laborers. This course of dealing had been followed for many months on October 24, 1902, four months before the filing of the petition in bankruptcy. On that day Harrison owed to the company more than $20,000. He owed other creditors many thousand dollars. The tie company held a mortgage on his property to secure the payment of $15,000 to it, and he was insolvent. During the month of December he applied to the tie company to advance him more money, and it refused his request. Thereafter, when the pay rolls for December, 1902, and January and February, 1903, came in, the company paid the laborers as usual, but, instead of sending to Harrison, as it had become accustomed to do, the price of the supplies which he had delivered to the men, it credited him with this amount, which aggregated $2,210.73, and in this way secured a payment of this amount upon its claim against him. The referee and the District Court held that this transaction gave to the tie company a voidable preference, and required it to pay to the trustee $2,210.73, as a condition of the allowance of its claim against the estate of the bankrupt.

This ruling is challenged by counsel for the appellant on three grounds: Because no transfer of anything by Harrison to the appellant was shown; because there was no proof that Harrison was insolvent, or that the tie company had any notice of his insolvency, when it withheld the price of the supplies; and because there was no evidence that Harrison intended to prefer the tie company when he delivered the supplies to the men, or that the company had any notice of any such intention.

But the test of a preferential transfer under the bankrupt act of 1898 is not whether or not the debtor has conveyed anything to the creditor, or whether or not the creditor has received anything from the debtor. It is whether or not the debtor has made a transfer of any of his property to any one in any way whereby the enforcement of the transfer will enable one of his creditors to obtain a greater percentage of his debt than any other creditor of his class can secure. So the question in this case is not whether or not Harrison transferred any of his property directly to the tie company, but whether or not any transfer of his property was made in the time and manner denounced by the bankrupt law, so that the tie company was enabled to secure a larger percentage of its claim against him than other creditors of its class can obtain.

One of the main purposes of the bankrupt law is to distribute the unexempt property which the bankrupt has four months before the filing of the petition in bankruptcy, share and share alike, among his creditors. In order to attain this object, the law provides that if a person, being insolvent, has, within four months before the filing of the petition, made a transfer of any of his property, the effect of the enforcement of which will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of his creditors of the same class, he shall be deemed to have given a preference, and that if he has given a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, the claim of

the creditor who has received such a preference shall not be allowed, unless he surrenders it. Bankr. Law 1898, c. 541, §§ 60a, 60b, 57g, 30 Stat. 562, 560 [U. S. Comp. St. 1901, pp. 3445, 3443], as amended in Act Feb. 5, 1903, c. 487, §§ 13, 12; 32 Stat. 799 [U. S. Comp. St. Supp. 1903, pp. 416, 415]; Swarts v. Fourth Nat. Bank, 117 Fed. 1, 3, 4, 54 C. C. A. 387, 389, 390. The uniform practice of the tie company for many months before October, 1902, to pay to Harrison once or twice in 30 days the price of all the supplies which he furnished to the workmen who prepared and hauled the ties for it, warranted a finding and conclusion that, while Harrison delivered the goods to the workmen, he sold them to the tie company, and that company became legally and morally bound to pay him their value. When, therefore, the company refused to pay him, and credited him on account of these goods with $2,210.73 upon its claim of $20,000 against him, the effect of the transaction was to pay $2,210.73 of Harrison's indebtedness to the tie company with these supplies, which were a part of his estate. Moreover, whether the workmen or the tie company were the legal debtors of Harrison for these supplies, the actual result of the transaction was the same. Within the four months before the filing of the petition the supplies were a part of the estate of the insolvent, Harrison. At the end of the four months they had been converted into ties, which were a part of the property of the company. The latter had received in the ties the value of $2,210.73, which had been transferred to it from the estate of Harrison, and for which it had paid nothing to the workmen or to Harrison, except by means of the credit it had given to Harrison upon its claim against him. But every transfer of his property by an insolvent, within four months of the filing of the petition in bankruptcy, which has the effect to "enable any one of his creditors to obtain a greater percentage of his debt" out of the property of the insolvent "than any other of such creditors of the same class," is a preference. Swarts v. Fourth Nat. Bank, 117 Fed. 4, 54 C. C. A. 390. The transfer of the supplies which were a part of the property of Harrison enabled the tie company to obtain about 10 per cent. more of its debt out of his estate than other creditors of its class can secure, and the contention that this transaction did not constitute a preference under the law cannot be maintained.

Was Harrison insolvent when the company secured this preference, and did the latter have notice of this fact? The answer must be in the affirmative. He owed the tie company more than $20,000. It held a mortgage on his property, which had been made in January, 1902, to secure the payment of $15,000. He had frequently made statements of his assets and liabilities to the company which showed the former to be "a little bit more" than the latter. In December he applied for the advance of more money, and the company refused his request because it had received information that his indebtedness was greater than he had represented it to be. Thereupon, on December 28, 1902, the company first applied an installment of its indebtedness to Harrison for the supplies furnished to its workmen to the payment of a part of the bankrupt's indebtedness to it. These facts convince that Harrison was insolvent, and that the tie company knew it before it applied its indebtedness to him in payment of its claim against him.

There is no evidence in the record before us that Harrison ever intended by the sale of the supplies to prefer the tie company to his other creditors. Prior to December, 1902, the company had invariably sent him its checks for the supplies which he delivered, and he probably expected that it would, and intended that it should continue to do so. If it had done so, no preference would have been created. It failed to continue its practice, and, by withholding payment for the supplies from Harrison and crediting him with their price, it secured a payment of $2,210.73 upon its claim against him. Counsel for the company persuasively argue that this transaction did not constitute a voidable preference, because Harrison did not intend to give any preference by means of it. But an intention on the part of the insolvent to give a preference by means of a transfer which he makes is not always indispensable to its existence. It is sufficient if he has given the preference, and the party receiving it has reasonable cause to believe "that it was intended thereby to give" it. The statute does not require that it should be intended by the debtor, but is fully satisfied by the existence of an intention on the part of the actor—the person who procures, brings about, or effects the transfer. The preferences denounced by the statute are often secured by creditors without any desire or intention on the part of the debtors to give them, as in cases in which the creditors obtain judgments against their debtors over defenses made to the actions in good faith, and in cases, like that at bar, where, without the consent of their debtors, creditors appropriate to the payment of their claims the property of their debtors which happens to be under their control. Such transactions are none the less voidable preferences, that the debtors do not intend them to have that effect. If they are conducted within the four months, and if they have the effect to give to the creditors who conceive and execute them larger percentages of their claims than other creditors of the same class receive, they fall as clearly under the ban of the law as transfers made by debtors with the intent on their part to give the preferences. Such a transaction is voidable by the trustee not only when the party receiving it has reasonable cause to believe that it was intended by the debtor, but also when it was intended by the creditor, or by the actor who accomplished the result, to work a preference by means of the transaction. Act July 1, 1898, c. 541, §§ 60a, 60b, 57g, 30 Stat. 562, 560 [U. S. Comp. St. 1901, pp. 3445, 3443], as amended in Act 5, 1903, c. 487, §§ 13, 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, pp. 416, 415]. The tie company in this case had reasonable cause to believe that the transaction which it conducted was intended to give it a preference over the other creditors of Harrison in its class. Indeed, it knew that this was the object of the transaction. It knew that its own intention and purpose was to secure such a preference by applying the debt it owed to Harrison for the supplies in part payment of its large claim against him for money advanced, and it attained its object, at least temporarily. The transaction fell fairly within the terms of section 60, and it constituted a voidable preference.

Finally, it is said that this $2,210.73 was a credit to Harrison, and that the company should be permitted to set it off against his debt to it, and should be allowed to prove its claim for the balance remaining, without restriction, on the ground that these claims were mutual debts

and credits, under section 68 of the bankrupt law. But this section must be read and construed with sections 60a, 60b, and 57g, and in the light of the dominant purpose of the law to distribute to the creditors equally all the unexempt property owned by the insolvent four months before the petition in bankruptcy is filed. When it is thus read, it becomes plain that preferences denounced by, and made voidable under, sections 60a and 60b, cannot be permitted to stand as offsets against claims of the preferred creditors against the bankrupt which accrued more than four months before the filing of the petition. If this could be done, any creditor who had a running account with his debtor could secure an unassailable preference by simply receiving and crediting upon this account within the four months sufficient money or property of his debtor to satisfy his claim. The truth is that the law draws a line through the account between the insolvent and his creditor four months before the petition in bankruptcy is filed. All mutual debts and credits which accrue prior to that time may be set off against each other. Credits to the insolvent accruing subsequent to that time which constitute voidable preferences under section 60 are excepted by that section from the subsequent provisions found in section 68 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), and they cannot be used to offset debts of the insolvent which accrue prior to that date. The mutual debts and credits which accrue within four months of the filing of the petition, and which do not constitute voidable preferences, may be set off against each other, as well as against the respective debts and credits accruing more than four months before the petition is filed. The credit to Harrison of the $2,210.73 constituted a voidable preference, and cannot, therefore, be lawfully set off against the claim of the tie company against him under section 68. There is, however, an item of $75 in the claim against Harrison which may perhaps properly be used to reduce the amount of the preference under section 60c, which provides that a claim for money or property delivered to a debtor under a new or further credit by a creditor after he has been preferred may be offset against the preference. While the evidence is not very satisfactory, it seems to indicate that this $75 was advanced to Harrison after the company had secured a preference to the amount of $1,042.77. The amount to be refunded by it will accordingly be reduced by the sum of $75, and the order of the court below will be modified to the effect that the claim of the Western Tie & Timber Company against the estate of the bankrupt, Harrison, be expunged unless the company pays to the trustee of the estate $2,135.73 within 20 days after the mandate of this court is filed and entered in the court below, and the order thus modified will be affirmed.

It is so ordered.