WILLIAM B. BELKNAP ET AL. *v.* GARLAND LYELL, TRUSTEE.

[42 South. Rep., 799.]

1. FRAUDULENT CONVEYANCE. *Mortgages.* *Retention of possession.*

A deed of trust, executed by an insolvent trader to secure one of his creditors, which conveys the debtor's stock of merchandise then on hand and merchandise that may thereafter be purchased for sale in the debtor's store, and which gives the debtor the right to retain possession and sell in the course of trade, is void.

2. SAME. *Bankruptcy.* *Preference.* *Bill of sale.*

A bill of sale of his stock of goods by an insolvent debtor, within four months of his filing a petition in bankruptcy, the intent and effect of which is to give a preference to the creditor to whom it is given, is void under sec. 60*a* and sec. 60*b*, Bankr. Act, July 1, 1898.

FROM the chancery court of Lincoln county.

HON. ROBERT B. MAYES, Chancellor.

Lyell, trustee in bankruptcy, the appellee, was complainant in the court below; Belknap and others, the appellants, doing business as Belknap & Company, were defendants there. From a decree in favor of the complainant the defendants appealed to the supreme court.

On July 17, 1901, D. T. Bryant, a merchant, being indebted to W. B. Belknap & Company, executed his promissory note to said company, due January 1, 1903, for $1,744, and to secure the payment of the note and any further advances to be made he executed a deed in trust for the benefit of Belknap & Company, which conveyed to P. Z. Jones, trustee, "his entire stock of hardware, goods, wares, and merchandise now in the storehouse known as the 'Leary Building,' and occupied by the party of the first part as his hardware store in the city of Brookhaven, Lincoln county, Mississippi, together with all store fixtures, furniture, iron safe, showcases, etc., used in connection with said store, and also all goods, wares, and merchandise that may hereafter be purchased by the party of the first part to be sold in his store before the satisfaction of this deed in trust, and all of the further acquisitions, earnings, accretions, and profits of the said business before the satisfaction of the said deed in trust, and any increase of the property, real or personal, that may hereafter be acquired by purchase or otherwise, the title to which unto the said trustee or any successor he warrants and agrees forever to defend." The deed in trust gave Bryant the right to retain possession and sell in the course of trade, and provided that in case of default in the payment of the indebtedness, or if the trustee at any time believed the property, or any part thereof, endangered as security for said payments, he might sell and dispose of the same, etc. In June, 1902, Belknap & Company filed a bill in the chancery court against Bryant, charging that he was disposing of the property at inadequate prices and converting it into money with intent to place it beyond the reach of his creditors; that the property was not ample security for the debt of complainant (Belknap & Company) ; that it was being dissipated by defendant (Bryant), and that, if defendant was permitted to remain in possession of the property until the maturity of the note, the property would be so wasted as to render the security worthless. The prayer of the bill was for a writ of sequestration. After

the writ had been issued, Bryant executed the following instrument, dated June 13, 1902: "I hereby surrender and deliver possession to P. Z. Jones, trustee, the entire stock of hardware, goods, wares, and merchandise, store fixtures, furniture, iron safe, showcases, etc., now located and contained in the Leary building, in the city of Brookhaven, Mississippi, occupied by me for the last two years or so as a hardware store. The said trustee is to dispose of and sell, immediately after the signing of this instrument, the said property to the best advantage, and either at public or private sale, as he may deem best, and the net proceeds he shall apply, after deducting necessary expenses, to the liquidation of the debt due by me to W. B. Belknap & Company, and mentioned in a deed in trust of date July 18, 1901, and of record in chattel deed book No. 14, Lincoln county; this delivery being made under and in pursuance to the terms of the said instrument, which is referred to and made a part thereof." At the same time Belknap & Company executed the following: "We have received of D. T. Bryant his stock of hardware, goods, wares, and merchandise, store fixtures, iron safe, showcases, etc., in the Leary building, Brookhaven, Mississippi, through P. Z. Jones, our trustee, and we hereby agree to pay to D. T. Bryant, or order, the net proceeds of all we realize out of said property in excess of $1,200 net, less $349 already arranged and paid for an assignment of insurance and by cash. We agree to realize the best prices obtainable for the said property, and not to sacrifice or sell it at an unreasonably low or absurd figure." On July 17, 1902, after Belknap & Company had taken possession of the property, involuntary bankruptcy proceedings were instituted against Bryant by certain of his other creditors; and Lyell, the appellee, was named as trustee. The trustee thereafter filed a bill in chancery against the appellants, praying a decree in favor of the trustee for the value of the property delivered to the appellants and for the amount of the preferred payments made by Bryant within four months

prior to filing of the petition in bankruptcy. The bill alleged that the deed in trust executed July 18, 1901, was fraudulent and void; that the instrument executed June 13, 1902, less than four months before the bankruptcy proceedings, and at a time when Bryant was insolvent, was also fraudulent and void, being made for the purpose of preferring Belknap & Company over the other creditors, and of defrauding the other creditors in the collection of their debts. .

*P. Z. Jones,* for appellants.

No question was raised as to the validity of appellants' debt; no actual fraud was charged or proven. The fraud relied upon is constructive fraud, in that Bryant was allowed to remain in possession of the stock of goods after the execution of the deed in trust. This deed in trust was placed on record immediately after its execution, and about twelve months elapsed before the filing of the petition in bankruptcy. Every one had notice of the deed in trust, and that the trustee had the right at any time to take possession of the goods mentioned and conveyed in the deed in trust; that the deed was not absolutely void, but was valid as between Bryant, the trustee, and Belknap & Company. Our court has repeatedly held that such a deed in trust is valid as against third parties, if possession is delivered thereunder to the trustee. Before creditors acquired any right to subject the property to the payment of their debts, possession was delivered to the trustee under the deed in trust, and the rights of Belknap & Company, through their trustee, are superior to those of the other creditors. The transaction was perfectly legal and valid under the laws of Mississippi, and must be held legal and valid under the federal statutes. *Flash .v. Baldwin,* 59 Miss., 61; *Thompson* v. *Fairbanks,* 196 U. S., 516; *Humphreys* v. *Tatman,* 198 U. S., 91.

The contention of the counsel for the appellee is that the deed in trust executed by Bryant to the appellants on July 17,

1901, is void because possession was not taken immediately after the delivery to the trustee; that the transfer made by Bryant on June 13, 1902, is void because it was made within four months of the bankruptcy proceeding, while Bryant was insolvent, and known to be insolvent, and made by him and received by Belknap & Company for the purpose of giving Belknap & Company a larger per cent of his debt than the other creditors would receive. Under *Flash* v. *Baldwin, supra,* the question as to whether the transfer from Bryant to Belknap & Company, through their trustee, on June 13, 1902, was fraudulent, is a question of fact. If the purpose of the parties was to secure the payment of an honest debt, in a just, fair and honest manner, then the transaction, under the state laws, is perfectly legal and valid. There is nothing in the proof to indicate that Belknap & Company, or their agents and attorneys, were actuated by any desire except the securing of the payment of an honest debt, and the transaction should not be condemned simply because, by their diligence, they secured the partial payment of their debt to the exclusion of the other creditors. The records may be searched, and we invite a most careful scrutiny, for the purpose of ascertaining any actual fraud. If the transaction is to be condemned, it is because of the federal statutes on the subject of bankruptcy. According to the two federal cases decided by the United States supreme court, *supra,* when any transfer of property is legal and valid under the state laws where the transaction occurred, then it is legal and valid under the bankruptcy law.

The supreme court of Mississippi has held that such a mortgage is valid, and may be enforced if the trustee actually takes possession, and such lien can only be avoided by an execution or attachment creditor, whose lien actually attaches before the taking of possession by the mortgagee. Although this after acquired property was subject to the lien of an attachment or execution creditor if perfected before the trustee took possession

under the deed in trust, yet, if there was no such creditor, the enforcement of the lien by the taking of possession would be legal, even if within the four months provided under the act. The trustee in bankruptcy does not under such circumstances occupy the same position as a creditor levying under an execution or by attachment, and his rights in this case are different from what they are generally stated to be. *Mueller* v. *Newton,* 184 U. S., 1.     Under the bankruptcy act of 1867, it was held that the assignee in a bankruptcy suit is in the shoes of the bankrupt, and that except where within the prescribed period before the commencement of the proceedings in bankruptcy an attachment has been sued out against the property of the bankrupt, or where a disposition of his property was under the statute fraudulent and void, his assignee takes his real and personal estate, subject to the equitable lien and encumbrance thereon, whether created by contract or by the operation of law. *Yeatsman* v. *New Orleans Savings Institution,* 95 U. S., 764 (24 L. ed., 589).

Under the present bankruptcy act, the trustee takes the property of the assignee in the cases not affected by fraud, in the same plight and condition that the bankrupt held it, and subject to the equities impressed upon it in the hands of the bankrupt. *Re Garcewich,* 53 C. C. A., 510.


*H. Cassedy* and *G. G. Lyell,* for appellee.

The transfer of June 13, 1902, was preferential and void under the bankruptcy act of 1898, which governs the case. Sections 60*a* and 60*b,* Bank. Act July 1, 1898; *Western Tie & Lumber Co.* v. *Brown,* 64 C. C. A., 256.

The deed of trust of July 17, 1901, was fraudulent *per se* and void under the decisions of this court. *Harman* v. *Haskins,* 56 Miss., 142; *Joseph* v. *Levy, Ib.,* 843; *Brittain* v. *Criswell,* 63 *Ib.,* 394; *Baldwin* v. *Little,* 64 *Ib.,* 126; *Tallman* v. *Tuttle,* 65 *Ib.,* 492; *Bank* v. *Goodbar,* 73 *Ib.,* 566.

The cases of *Thompson* v. *Fairbanks,* 197 U. S., 516, and *Humphreys* v. *Tatman,* 198 U. S., 91, relied on by the appellant, are not applicable. They rest on decisions of the appellate courts of Vermont and Massachusetts respectively, the federal supreme court simply following those decisions as determining the validity of a chattel mortgage in those states, which is treated as a local question. The opinions in both cases show that the federal supreme court has never departed from the views expressed in *Robinson* v. *Elliott,* 22 Wall., 513.

WHITFIELD, C. J., delivered the opinion of the court.

The trust deed executed by Bryant on July 17, 1901, to secure a promissory note for $1,744, due January 1, 1903, was absolutely null and void under repeated decisions of this court. The bill of sale by Bryant to P. Z. Jones, trustee, to pay Belknap & Company, was executed within four months of the petition by Bryant to have himself declared a bankrupt. Contemporaneously with the execution of this bill of sale Belknap & Company executed a writing whereby they agreed "to realize the best prices obtainable for the said property, and not to sacrifice it, or sell it at an unreasonably low or absurd figure." The evidence shows conclusively that the stock was outrageously sacrificed for the benefit of Belknap & Company, who got the full value of their debt. The evidence further conclusively shows that the intent and purpose of Belknap & Company and Bryant were that Bryant should execute this bill of sale to give Belknap & Company a preference. It is held in *Western Tie & Timber Co.* v. *Brown,* 129 Fed. Rep., 728 (64 C. C. A., 256), that, "The test of a preferential transfer, under the bankruptcy act of 1898, is not whether or not the debtor has conveyed anything to the creditor, or whether or not the creditor has received anything from the debtor. It is whether or not the debtor has made a transfer of any of his property to any one in any way whereby the en-

forcement of the transfer will enable one of the creditors to obtain a greater percentage of his debt than any other creditor of the same class can secure. One of the main purposes of the bankruptcy law is to distribute the unexempt property which the bankrupt has, four months before the filing of the petition in bankruptcy, share and share alike among the creditors." See, also, the amendment to Bank. Act July 1, 1898, ch. 541, secs. 60a, 60b, 30 Stat., 562 (U. S. Comp. St. 1901, p. 3445), enacted February 5, 1903 (Act Feb. 5, 1903, ch. 487, sec. 13, 32 Stat., 799 [U. S. Comp. St. Supp. 1905, p. 689]):

"SEC. 60a. Preferred Creditors: A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will enable anyone of his creditors to obtain a greater percentage of his debt than other of such creditors of the same class.

"SEC. 60b. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

The act of 1898, as seen from the dates, governs in this case. Under the facts there can be no doubt that this bill of sale, made to give this preference, falls under the condemnation of the bankruptcy law. Counsel for appellant invoke the case of *Baldwin* v. *Flash, Preston & Co.,* 59 Miss., 61; but that was a case where the actual surrender of the goods was made before the rights of a third person intervened, and the court cited with approval the following language from the Massachusetts supreme court: "If the act to which it is applied is voidable only, then it inures by way of ratification. If actually void,

and the subsequent act of itself is sufficient, it inures as by original act."

Learned counsel for appellants also invokes the case of *Thompson* v. *Fairbanks,* 196 U. S., 516 (25 Sup. Ct., 306). But that case was decided upon a construction of a Vermont statute by the Vermont supreme court, and, of course, followed that construction. In its opinion the supreme court of the United States pointed out that the mortgage, in that case, was held to be valid by the supreme court of Vermont under the provisions of the Vermont statute, and in the course of the opinion said: "If this mortgage were fraudulent *per se,* then what the parties did under it, in taking and delivering possession before the petition for the adjudication of the insolvency of the debtor as filed, would be of no avail to the defendant to enable him to hold the goods which are included within the terms of the mortgage." But these decisions can be of no avail to the appellants in this case, because the trust deed in this case is, under our decision, absolutely void, and the only ground the appellants have left to stand on is their contention that the act of surrendering the goods under the bill of sale relates back to the time of the execution of the trust deed. But the supreme court of the United States clearly says that such relation back cannot take place if the trust deed was null and void, and not simply voidable, and that, when properly understood, is also what was held in *Baldwin* v. *Flash, Preston & Co., supra.* The original act, in that case, took place before the rights of third persons intervened. The original act here—the bill of sale—occurred within four months of the filing of the petition in bankruptcy.

There is no merit in the other contention of the appellant, wherefore the decree is

*Affirmed.*