RUTLAND COUNTY NAT. BANK v. GRAVES.

(District Court, D. Vermont. September 21, 1907.)

1. BANKRUPTCY—VOIDABLE PREFERENCES—INTENT TO PREFER.

In determining the question of a bankrupt's insolvency at the time he made a payment to a creditor, as bearing upon the question of his intent to give a preference, his property should be taken at a fair valuation, and not at the amount it afterward brought when sold at auction by the trustee in bankruptcy.

2. SAME.

A bankrupt, at the time he made a partial payment on a note to a bank which he had signed as surety owned and conducted a large store, was director and president of a manufacturing concern and a national bank. He was a man of good reputation and credit, and at his own estimate the value of his property as a going concern was several thousand dollars more than his indebtedness. His bankruptcy shortly after was brought chiefly if not entirely through the insolvency of the manufacturing company caused by the burning of its plant, which was at the time uninsured, through default of a lessee. *Held*, that under such circumstances the payment could not be found to have been made with intent to give a preference such as would render it voidable, and require its surrender under Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 [U. S. Comp. St.

1901, p. 3443], as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], before the creditor could prove the remainder of its claim.

In Bankruptcy. On review of decision of referee.

R. A. Lawrence, for claimant.
J. K. Batchelder, for trustee.

MARTIN, District Judge. In this case a payment was made by the bankrupt to a creditor within four months of bankruptcy proceedings. The question is whether that payment was made with intent to prefer, and whether it was received under such circumstances that there was reason to believe that a preference was intended.

In weighing the evidence relating thereto, it becomes necessary to consider the meaning of the statute of February 5, 1903, and the necessary and legal inferences arising from the circumstances under which the payment was made.

Section 57, subd. "g," of the statute of July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], reads thus:

"The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

The amendment (Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]), changed said subdivision "g" to read thus:

"The claims of creditors who have received preferences, voidable under section 60, subdivision 'b,' or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section 67, subdivision 'e,' have been made or given, shall not be allowed unless such creditors shall surrender such preferences, conveyances, transfers, assignments or encumbrances."

It will be observed that this amendment of said subdivision "g" is limited to creditors who have received preferences voidable under section 60, subd. "b," and section 67, subd. "e." No such limitation existed until this amendment was made.

Subdivision "a" of section 60, which provides, in substance, that a person shall be deemed to have given a preference if, being insolvent, he has within four months before filing of the petition, etc., suffered judgment or made a transfer of his property, etc., was not included in the amendment. Subdivision "b" of said section 60, which provides, in substance, that if a bankrupt shall have given a preference, and the person receiving it, etc., shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable, and subdivision "e" of section 67, which provides, in substance, that conveyances, transfers, etc., made or given by a person adjudged a bankrupt within four months prior to the filing of the petition, with intent and purpose on his part to hinder, delay, or defraud his creditors, shall be void, are included. Before the amendment, a creditor could not be allowed for the balance due if he had received a preference for any portion of a debt unless he surrendered the preference so received, and an insolvent person, who, within four months of filing his petition in bankruptcy, made a transfer of his property to a creditor whereby the creditor obtained a larger percentage of his debt than any other of

such creditors of the same class, was deemed to have given a preference whatever might have been his intent.

In Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, the Supreme Court, by a divided opinion, four judges dissenting, construed the statute of 1898 as above stated. There the court held that, if a person receiving payment did not have cause to believe that it was intended as a preference, he may keep the property transferred; but, if it be. only a partial discharge of his debt, he cannot prove the balance without returning the payment. This case was decided May 27, 1901. The amendment above referred to was approved February 5, 1903. It is apparent that Congress intended, by this amendment, that creditors of a bankrupt receiving partial payment and those receiving full payment should stand on the same basis. Of course, Congress could have provided that they should all come under the principle defined in subdivision "a" of section 60, which would have been, in effect, that any payment made within four months of bankruptcy should be recoverable by the trustee, whatever may have been the intent of the payor or payee; but it did not so provide, but did expressly provide, by the elimination in the amendment of subdivision "a" of section 60, and by the inclusion of only subdivision "b" of said section, and subdivision "e" of section 67, that in order to make a payment a preference it must have been made by the debtor with intent to prefer, and the creditor who received it must have had reasonable cause to believe that a preference was intended. To enable a trustee to recover, the equivalent of both these conditions must appear.

In Re Andrews, 16 Am. Bankr. Rep. 387, 144 Fed. 922, 75 C. C. A. 562, Judge Putnam, speaking for the First Circuit, discusses at length the effect of the amendment of 1903 upon payments, and therein that court held that said amendment involves the element that a creditor cannot be held to have had a good reason to believe a preference was intended unless a preference was actually intended on the part of the debtor, or unless there existed what the law regards as the equivalent thereof. This change in the law makes inapplicable a large number of the decisions of the courts relative to payments made by a bankrupt within four months of the bankruptcy proceedings, some of which appear upon the brief of counsel for the trustee, notably Benedict v. Deshel, 11 Am. Bankr. Rep. 20, 177 N. Y. 1, 68 N. E. 999. It was there held under the law previous to the amendment that a trustee need not prove an intent on the part of the insolvent in making the payment. This case arose before the amendment of 1903.

The case of Western Tie & Timber Co. v. Brown, 12 Am. Bankr. Rep. 111, 129 Fed. 728, 64 C. C. A. 256, illustrates what the law regards as the equivalent of an intent in making payment by the bankrupt. In that case the bankrupt was running two stores and was engaged in gathering ties for the Western Tie & Timber Company and selling supplies from his stores to the laborers engaged in this work. Once in two or three weeks an inspector sent to the company a pay roll upon which appeared the name of each workman, and the amount owing to him for his services and the price of the supplies which the bankrupt had furnished him. The company uniformly deducted from the wages due each workman the price of the supplies which Harrison, the bank-

rupt, had delivered to him, sent the workman his check for the balance, and sent said Harrison the price of the supplies he had furnished the laborers. There came a time when the company ascertained that Harrison was insolvent. He was owing the company upwards of $20,-000 and other creditors many thousand dollars. The company, after discovering the bankrupt condition of Harrison, sent the laborers their checks as before, but, instead of sending Harrison his check for the supplies furnished the laborers, they withheld it, and applied it as part payment of the debt he owed the company, and against his protest, and this within four months of his bankruptcy. The mooted question there was whether there was any transfer. It is true that the trial judge, who wrote the opinion, used this language:

"But an intention on the part of the insolvent to give a preference by means of a transfer which he makes is not always indispensable to its existence. It is sufficient if he has given the preference, and the party receiving it has reasonable cause to believe that it was intended thereby to give it. The statute does not require that it should be intended by the debtor, but is fully satisfied by the existence of an intention on the part of the actor—the person who procures, brings about or effects the transfer."

In that case the creditor practically seized this money and applied it on the debt due him from the bankrupt. Such action amounts in law to an equivalent of an intent on the part of the debtor. An attachment on the part of the creditor may have the same effect. This holding is not in conflict with the amendment, as that applies to voluntary payments by the hand of the bankrupt. In that event, the debtor must intend to prefer in order to render the payment void.

From a careful examination of the testimony given before the referee, these facts appear: The claimant is a national bank, located at Rutland, Vt., some 28 or 29 miles from Manchester, where the bankrupt resides. On March 13, 1901, the claimant made loans amounting to $12,000 to the Vail Light & Lumber Company, a corporation having its place of business at said Manchester. Said corporation executed its notes for the amount of said loan, and Allen L. Graves of said Manchester, the bankrupt, and J. D. S. Packer, signed said notes as surety. Said Packer was a director of said corporation, and said Graves, the bankrupt, was a director and its president. He was also president of the Factory Point National Bank, located at Manchester Center, where he lives. When the notes became due, payments were made and new notes given for the amount remaining unpaid. On the 13th of March, 1906, $7,000 of the original loan had been paid, leaving $5,000 then due. The officers of the bank then told Mr. Graves that said loan might be extended another four months on condition that a payment of at least $1,000 should be made at the end of said four months (July 13th). This was then agreed to by Mr. Graves. It appears that the officers of the bank wanted the note reduced from time to time until paid, as it was getting to be "an old loan." They then inquired of Mr. Graves, who was a reputable man, as to the condition of said corporation, and were informed by him that it had sufficient property to pay its debts. He also told them that there were no incumbrances upon his property, and no suits had ever been brought against him. The bank officers were then contented to extend the

loan four mnoths and did so. On July 13th said Graves paid $500, and said Packer $500, and gave a new note, signed as before, for the remaining $4,000. At the time of this payment, July 13th, said corporation had many hundred acres of timbered land and a valuable mill being operated by parties who had agreed to keep it insured, pay all of the debts of the company, including over $7,000 to said Graves, and then take the property.

Mr. Graves had been for many years, and then was, running a large country store at Manchester Center. He testified that his then valuation of his store of goods, as a going business, was $20,000. I find from the evidence that he also had: Accounts due, over $1,500; real estate, $5,000; bank stock, $6,000; life insurance, over $5,000; other property valued at over $1,500; due from Vail Light & Lumber Company, over $7,000—making a total of $46,000. His individual liabilities were $33,000.

On September 4, 1906, over seven weeks after the payment in question, the mill of the Vail Light & Lumber Company was destroyed by fire. The parties operating the mill under the contract aforesaid failed to keep the mill insured. It was valued over $20,000 and was a total loss to said company. This was the cause, or at least the immediate cause, of the bankruptcy of said Allen L. Graves. Had the officers of the bank, before the burning of the mill, made careful inquiries of the ordinary sources of information, they doubtless would have been informed that Mr. Graves had property in assets of over $40,000; that there had never been any attachments on his property or other incumbrances; and that he had good credit and was apparently solvent. Mr. Graves filed his petition in bankruptcy soon after the burning of said mill. The trustee, under the direction of the referee, sold the store of goods in a lump at a bankrupt auction sale for $11,140. It was bid off by friends of the bankrupt, and the bankrupt is now carrying on the business of that country store as before.

Usually the finding of facts by the referee is affirmed by the court; but in this case the referee determined that the fair value of the bankrupt's estate at the time of making the payment in question was the amount it brought at the bankrupt auction sale, and also assumed that the debt due the bankrupt from the Vail Light & Lumber Company of upwards of $7,000 was then of no value. Thus his estimation of the bankrupt's assets was over $15,000 less as a bankrupt concern than the bankrupt estimated them as a going concern, and by that computation he finds the bankrupt to have been insolvent by about $2,000, and that Mr. Graves, the bankrupt, ought to have known it, and therefore he finds that the bankrupt intended a preference in making said payment, and that the officers of the bank had reasonable cause to believe that he was insolvent and thereby intended a preference.

I cannot concur in this finding. A party in making collections of a debtor is not bound by law to estimate the value of the payee's property on the basis of a bankrupt auction sale; a fortiori, this principle applies to the payee's intent in making payment. In re Gilbert (D. C.) 8 Am. Bankr. Rep. 101, 112 Fed. 951; Duncan v. Landis, 5 Am. Bankr. Rep. 649, 106 Fed. 839, 45 C. C. A. 666; Chicago Title & Trust Co. v. John A. Roebling's Sons (C. C.) 5 Am. Bankr. Rep. 368, 107 Fed. 71.

We are to look at these parties at the time this payment was made as viewing the situation with ordinary common sense. What did they understand the condition and financial standing of the payee to be? He was then owning and operating a large store of goods as a running concern. He then had a good reputation and good credit. On that basis, which is the true basis, I find that Mr. Graves understood he was solvent at the time of making this payment, and thereby intended no preference, and that the officers of the bank had no reasonable cause to believe that the payee was insolvent or intended a preference.

Evidently Congress intended by the amendment above referred to to so change the law as not to place an embargo upon common business affairs. To hold that a party receiving payment must estimate the assets of the payee at what they would bring at a bankrupt auction sale surely would be an embargo on business, if not to say an imposition of a penalty upon due diligence in the making of collections in ordinary business affairs.

Counsel for the trustee forcibly and ably presented the theory that there must be added to the bankrupt's personal liabilities his liability on the Vail Light & Lumber Company notes, which amounted to many thousand dollars. I concur in this view, but in that event the property of the Vail Light & Lumber Company must be treated as assets in considering Mr. Graves' intent in making the payment. Mr. Graves testified that at the time of this payment he believed the Vail Light & Lumber Company had property enough to pay its debts, and that he so stated to the officers of the bank. I find that he testified truthfully. Hence his liability on obligations of the Vail Light & Lumber Company cannot be construed as evidence that Mr. Graves intended a preference in making this payment.

After full hearing of the case before me, counsel for the trustee raised some question as to the pleadings, but upon examination of the papers I do not find any irregularity except what was waived or could have been cured by amendment if the question had been raised at the hearing. At the hearing before the referee, full evidence was adduced by both parties, and the same was sent to me for review. The referee allowed the full claim of the claimant on condition that said payment of $500 be returned to the estate. This order of the referee that said payment be returned is reversed.

Let the claim be allowed at $4,000, with interest.